No. 22-1998

# IN THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

MONIQUE RUSSELL, JASMINE RIGGINS, ELSA M. POWELL, and DESIRE EVANS, on behalf of themselves and all others similarly situated,

*Appellants*,

v.

EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES,

*Appellee.*

On Appeal from the United States District Court for the Eastern District of Pennsylvania, No. 2:18-cv-05629-JDW (Wolson, J.)

## BRIEF OF APPELLANTS

JANET, JANET & SUGGS, LLC
  Patrick A. Thronson
  Brenda A. Harkavy
  4 Reservoir Circle, Suite 200
  Baltimore, MD 21208
  (410) 653-3200
  pthronson@jjsjustice.com

CONRAD O'BRIEN P.C.
  Nicholas M. Centrella
  Robin S. Weiss
  1500 Market Street, Suite 3900
  Philadelphia, PA 19102-2100
  (215) 864-9600

*Additional Counsel on Inside Cover*

LAW OFFICES OF PETER G.
ANGELOS, P.C.
  Paul M. Vettori
  One Charles Center
  100 N. Charles Street, 20th Floor
  Baltimore, Maryland 21201
  (410) 649-2000

THE COCHRAN FIRM
  Karen Evans
  David Haynes
  1666 K Street NW
  Suite 1150
  Washington, DC 20006
  (202) 682-5800

SCHOCHOR AND STATON, PA
  Scott Kurlander
  The Paulton
  1211 St. Paul Street
  Baltimore, Maryland 21202
  (410) 234-1000

Z LAW, LLC
  Cory L. Zajdel
  2345 York Rd. Suite B-13
  Timonium, MD 21093
   (443) 213-1977

***Counsel for Appellants***

# TABLE OF CONTENTS

TABLE OF CONTENTS .......................................................... iii

TABLE OF AUTHORITIES ......................................................vi

SUBJECT MATTER AND APPELLATE JURISDICTION .................... 1

STATEMENT OF THE ISSUES................................................. 1

STATEMENT OF RELATED PROCEEDINGS........................................2

STATEMENT OF THE CASE ..................................................... 2

   ECFMG's Role in the American Healthcare System ............................3

   Igberase obtains second certification under the "Charles" identity.
   ECFMG investigates and revokes Igberase's certification. ................... 8

   Igberase applies and is certified under the "Akoda" identity.............. 9

   ECFMG learns Akoda and Igberase are the same person.................. 10

   ECFMG nonetheless represents to Howard University's residency
   program, the State of Maryland, and Prince George's Hospital
   Center that "Akoda" has a valid ECFMG certificate. .......................... 12

   Igberase faces six felony charges and pleads guilty to one................. 13

   Plaintiffs suffer emotional harm.......................................... 14

   Class certification ....................................................... 16

   First appeal (ECFMG I) ...................................................... 18

   Proceedings on remand .................................................... 22

SUMMARY OF ARGUMENT ................................................23

STANDARD OF REVIEW........................................................................25

ARGUMENT ......................................................................................25

   I.  The district court erred in granting summary judgment on proximate cause grounds, because it misapprehended essential facts about the ongoing role of ECFMG in enabling Igberase/ "Akoda" to have access to patients, and relied on inapposite authority. ..................................................................25

     A.   The analysis of prong (a) fails to consider the "other factors" were dependent on and combined with ECFMG's negligence to produce the outcome. ..........................................................29

     B.   The analysis of prong (b) failed to consider that ECFMG operated as a continuing force that advanced Akoda's involvement in the medical system, not a "situation harmless unless acted upon by other forces for which the actor is not responsible." ...........34

     C.   The court also erred in analyzing prong (c), as no legally sufficient lapse of time bars a finding that ECFMG was a proximate cause of Plaintiffs' injuries. .............................................35

   II.  The district court erred in finding that Pennsylvania would not recognize Defendant's negligent infliction of emotional distress on Plaintiffs by enabling Igberase's sexual assaults................................36

   III.   The trial court erred in concluding that Plaintiffs were not in the clear zone of danger........................................................................42

   IV.   The trial court erred in concluding that Pennsylvania's Supreme Court would not rule in Plaintiffs' favor, as none of the historical concerns for limiting recovery apply here............................44

iv

V.  Maryland law would not shield Defendant from liability. .............. 46

CONCLUSION ......................................................................... 48

CERTIFICATE OF SERVICE.................................................. 51

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Brown v. Philadelphia College of Osteopathic Medicine,*
674 A.2d 1130 (Pa. Sup. Ct. 1996) ....................................... 35

*Cherkes v. Abbott,*
*Lab'ys,* 45 Pa. D. & C.3d 603 (Pa. Com. Pl. 1986) ................. 39

*Commerce Bank/Pennsylvania v. First Union Nat. Bank,*
911 A.2d 133 (Pa. Super. Ct. 2006) ..................................... 30

*CSX Transp., Inc. v. McBride,*
564 U.S. 685, 131 S.Ct. 2630, 180 L.Ed.2d 637 (2011) ........................ 24

*Doe v. Philadelphia Cmty. Health Alternatives AIDS Task Force,*
745 A.2d 25 (Pa. Super. Ct. 2000) ................................... 38, 40

*Ellis v. Westinghouse Elec. Co., LLC,*
11 F.4th 221 (3d Cir. 2021) ................................................ 23

*Faya v. Almaraz,*
620 A.2d 327 (Md. 1993) ............................................... 46

*Ford v. Jeffries,*
474 Pa. 588, 379 A.2d 111 (1977) .................................... 25

*Hamil v. Bashline,*
481 Pa. 256, 392 A.2d 1280 (1978) ................................ 25, 26

*Hamilton v. Ford Motor Credit Co.,*
502 A.2d 1057 (Md. Ct. Spec. App. 1986) ........................... 46

*Hunt v. Mercy Med. Ctr.*,
121 Md. App. 516 (1998) ........................................................ 47

*Jefferson Bank v. Progressive Cas. Ins. Co.*,
965 F.2d 1274 (3d Cir. 1992) ......................................... 24, 25

*Lacey v. Cessna Aircraft Co.*,
932 F.2d 170 (3d Cir. 1991) .................................................. 46

*Lux v. Gerald E. Ort Trucking, Inc.*,
2005 PA Super 400, 887 A.2d 1281 (2005) ......................... 23

*Morris v. Hoffa*,
361 F.3d 177 (3d Cir. 2004) ................................................. 23

*Niederman v. Brodsky*,
261 A.2d 84 (Pa. 1970) ................................................. passim

*Potere v. Philadelphia*,
112 A. 2d 100 (Pa. 1955) .......................................... 37, 38, 39

*Ramara, Inc. v. Westfield Ins. Co.*,
814 F.3d 660 (3d Cir. 2016) .................................................. 24

*Russell v. Educ. Comm'n for Foreign Med. Graduates*,
15 F.4th 259 (3d Cir. 2021) ........................................... passim

*Shumosky v. Lutheran Welfare Servs. of Ne. PA, Inc.*,
784 A.2d 196 (Pa. Super. Ct. 2001) ................................. 40, 41

*Sinn v. Burd*,
486 Pa. 146, 404 A.2d 672 (1979) .................................. passim

*Stoddard v. Davidson*,
513 A.2d 419 (Pa. Super. 1986) ....................................... 38, 39

vii

*Straw v. Fair*,
  2018 PA Super 125, 187 A.3d 966 (2018) ............................................. 26

*Toney v. Chester Cnty. Hosp.*,
  614 Pa. 98, 36 A.3d 83 (2011) ................................................................ 36

*Vance v. Vance*,
  408 A.2d 728 (Md. 1979) ......................................................................... 46

*Zelinsky v. Chimics*,
  175 A.2d 351 (Pa. Super. 1961) ............................................................. 37

## Rules

Federal Rule of Civil Procedure 23 ....................................... 14, 15, 16, 17

## Other Authorities

Restatement (Second) of Torts § 324A ..................................................... 15

Restatement (Second) of Torts § 441 ....................................................... 26

viii

## SUBJECT MATTER AND APPELLATE JURISDICTION

The district court had jurisdiction of the case under the Class Action Fairness Act, 28 U.S.C. § 1332(d), following its removal to federal court. The Court of Appeals has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291, as the order being appealed from is a final judgment on the merits that disposed of all claims in the case.

## STATEMENT OF THE ISSUES

1.      Did the district court err in granting ECFMG's motion for summary judgment on proximate cause on both Plaintiffs' negligence and negligent infliction of emotional distress claims, where the district court applied an erroneous legal standard and overlooked record evidence that ECFMG had a key initial and ongoing role in Oluwafemi Charles Igberase a/k/a John Nosa Akoda's professional advancement into a "doctor" able to provide purported obstetrical care to women and children?

2.      Did the district court err in predicting that Pennsylvania law would not recognize a cause of action for negligent infliction of emotional distress under the circumstances?

1

## STATEMENT OF RELATED PROCEEDINGS

This case has previously been before this Court on ECFMG's petition for review of class certification pursuant to Rule 23(c)(4). *See Russell v. Educ. Comm'n for Foreign Med. Graduates*, 15 F.4th 259 (3d Cir. 2021), *cert. denied*, 142 S.Ct. 2706 (2022).

## STATEMENT OF THE CASE

This action arises from Defendant Educational Commission for Foreign Medical Graduates' ("ECFMG") negligent investigation and certification of Oluwafemi Charles Igberase, a/k/a John Nosa Akoda (among other aliases) ("Igberase"), as eligible to enter a residency program, notwithstanding compelling evidence that Igberase/"Akoda" had committed extensive fraud as to his identity and credentials. ECFMG knew of Igberase's fraud but failed to appropriately investigate and respond to it. ECFMG failed to inform state medical boards, residency programs, and hospitals of Igberase's fraud, even as it attested that Igberase held a valid ECFMG certification.

ECFMG acknowledged that "patients have the right not to be treated by physicians who have obtained ECFMG certification based on false pretenses." JA644, *see also* JA4011. Yet ECFMG failed to respect

2

this right and protect the public. As a result, Igberase had the

opportunity to examine, touch, harass, and sexually abuse hundreds of

women under the guise of providing OB/GYN care. These patients

would never have consented to examination and treatment by Igberase

had they known—as ECFMG did—that Igberase had obtained his

credentials through repeated acts of fraud, later found to constitute a

"crime of moral turpitude." JA322, 1363.

### ECFMG's Role in the American Healthcare System

Valid ECFMG certification is a necessary predicate to every

necessary professional credential an international medical graduate

("IMG") must obtain to be able to practice medicine following medical

school. ECFMG certification is required not only for an IMG to be able

to enter a residency program, but also to receive a license to practice

medicine by a state medical board and obtain clinical privileges to

practice medicine.

According to Appellant, "[p]art of ECFMG's mission is to promote

public health and to protect the public." JA643. ECFMG certifies IMGs

as eligible to enter US graduate medical education programs, and

verifies an IMG's credentials for hospitals and state medical licensing boards. JA201, 642–44, 689.

To practice medicine in the U.S., an IMG must first apply to ECFMG, which verifies from primary sources that the IMG has obtained a valid diploma from a medical school recognized by the school's home country. *See* JA205–06. An IMG must also pass portions of the United States Medical Licensing Examination (USMLE) and a clinical skills assessment. *Id.* When these steps are satisfactorily completed, ECFMG issues a certificate to the IMG. *Id.* ECFMG also acts as a dean's office for IMGs applying to residency programs. JA367.

As ECFMG's corporate representative, Kara Corrado, testified at deposition:

- ECFMG "serve[s] medical residency programs" in that it "has a certification program that is required for entrance into ACGME accredited residency programs." JA 641, JA4008. The ACGME, "the accreditation council for graduate medical education, determined it would use ECFMG certification for international medical graduates as one of the requirements for entrance into those residency programs." JA 643, *see also* JA4009.

- As to hospitals, ECFMG "provide[s] a service for employers that will verify the certification status of an IMG which is typically required when physicians, who are IMGs, are attempting to get credentialing privileges at hospitals." JA641–42. Hospitals use ECFMG for the purpose of primary-

4

source verification of medical education credentials. JA642. The report to a hospital includes "the name of the medical school" they attended and "whether or not they are ECFMG certified, and what the validity of that certification is." *Id*.

- Hospitals are obligated to perform primary source verification of a physician's credentials. JA643. The Joint Commission, an accrediting body for hospitals, has indicated that relying on an ECFMG certificate satisfies its requirements for primary source verification of credentials. JA643–44.

- ECFMG is "aware that as part of a credentialing process the hospital or residency program will request information from ECFMG regarding whether an applicant is ECFMG certified" and is "aware that that's part of the hospital's process of determining whether a hospital will grant medical privileges to practice at that hospital?" JA644.

- ECFMG's work is meant "to promote public health and to protect the public." JA643.

- ECFMG provided a certificate verifying Akoda as appropriately certified to the Howard University residency program, the Maryland Board of Physicians, and Prince George's County Hospital, but did not inform any of these entities that it suspected he was operating under a false identity until after a law enforcement investigation began. JA676. That investigation began nearly two decades after his certification. JA666.

As Plaintiffs' expert Dr. David Markenson testified,

[A]s part of application for residency and licensure, there are certain things that are binary, yes or no; and in the absence of them, you don't proceed to any other steps. ECFMG certification is a credential that's binary. You don't have it, you can't get into residency. Absent ECFMG certification, you can't be licensed. It is

a binary, that all the other things downstream don't occur towards licensure if that binary doesn't occur.

JA 3991.

Dr. Markenson further described the central importance of

ECFMG certification in his report and its causal connection to

Plaintiffs' injuries:

ECFMG is the only organization that certifies that IMG's have successfully completed medical education at an approved foreign medical school and that they have successfully completed the required medical examinations. <u>Without an ECFMG certification, an IMG cannot sit for required licensing exams, obtain a medical license, will not be accepted into a graduate medical education program and cannot obtain hospital privileges</u>. The standard of care applicable to ECFMG's certification process requires ECFMG to adopt reasonable policies and procedures and to follow those procedures to ensure that IMG's comply with all requirements for certification. ECFMG has undertaken to provide certification services which are necessary for the protection of the general public. <u>Its failure to exercise reasonable care in providing these services increases the risk of harm to the general public, including plaintiffs. Licensing agencies, medical schools and hospitals, among others, rely upon ECFMG to act reasonably in performing these services.</u>

It is my opinion, held to a reasonable degree of professional certainty, that ECFMG failed to adopt appropriate policies for certification of IMG's, failed to exercise reasonable care in its certification of Akoda and failed to exercise reasonable care in its investigation of allegations made about Akoda <u>and that these failures caused harm to the named plaintiffs and members of the class.</u>

6

> While it is accurate to say that certification by ECFMG is only one of the steps needed for a foreign medial graduate to obtain a license to practice medicine in the United States, it is a requirement without which an IMG cannot obtain a license, It is also a required certification for entering residency and obtaining hospital privileges. If ECFMG had acted reasonably, it would have denied certification to Akoda, and would have revoked Akoda's certificate, he would not have been able to enter the Howard University residency program, he would not have been able to obtain a Maryland medical license, he would not have been granted privileges at Prince Georges' Medical Center, and he would not have been able to harm the plaintiffs. The ECFMG certification process and investigation of suspicious or irregular behavior by ECFMG is important to ensure that individuals seeking to act as physicians treating patients are qualified and meet professional standards of honesty, morality and character. These qualities are critical to the physician patient relationship.

JA4183–84 (emphases added); *see also* JA3922–3934 and record materials cited therein.

Two other experts, Dr. Jerry Williamson and Dr. John C. Hyde, agree with Dr. Markenson *See* JA4264–66, -67 ("ECFMG's failure to act in a reasonable and prudent way permitted A[k]oda to practice medicine and increase the risk of harm to the plaintiffs in this class action lawsuit. . . . ECFMG's failure to properly investigate the matter, directly resulted in foreseeable injuries to Igberase/Akoda's patients" and "directly impacted patient safety."); JA4258–60.

7

### *Igberase obtains initial ECFMG certification after failing medical examination twice.*

In 1992, Igberase applied to ECFMG to take the Foreign Medical Graduate Examination in Medical Sciences ("FMGEMS")—the initial phase of the USMLE examination—and the ECFMG English Test. JA211. Igberase provided ECFMG with a purported 1987 diploma from the University of Ibadan in Nigeria. *See* JA216.

Igberase twice failed both the basic medical science and clinical science components of the FMGEMS. JA219. He passed the exam on the third try. *Id.* ECFMG issued him a certificate in 1993 after he passed steps 1 and 2 of the USMLE. JA239–40.

### **Igberase obtains second certification under the "Charles" identity. ECFMG investigates and revokes Igberase's certification.**

In 1994, ECFMG received a second application from Igberase, using the name "Igberase Oluwafemi Charles," to take steps 1 and 2 of the USMLE examination (again). JA242–44. His application falsely represented he had never taken the USMLE examination before. *Id.* After "Charles" successfully completed the USMLE examinations, ECFMG issued him a certificate under the Charles identity. JA239.

Shortly thereafter, ECFMG investigated whether Igberase and Charles were the same person. JA239–40. Igberase admitted he had lied about his identity and examination history because residency programs had rejected him for repeatedly failing the USMLE examinations. JA246–50.

ECFMG referred the matter to its Committee on Medical Education Credentials. The Committee found Igberase had engaged in "irregular behavior," invalidated the certificate issued to "Charles" and revoked Igberase's original certificate. JA252. In 1996, after Igberase appealed, ECFMG's Review Committee for Appeals limited the period of revocation to five years. JA260–61.

### Igberase applies and is certified under the "Akoda" identity.

While appealing this revocation, Igberase submitted a third application to ECFMG to take Steps 1 and 2 of the USMLE examination under the name "John Nosa Akoda." JA263, JA268. This time, he provided ECFMG a purported 1988 diploma issued to "Johnbull Enosakhare Akoda" from the University of Benin. JA753. ECFMG takes no position on where or whether Igberase/"Akoda" actually went to medical school. JA653. It merely claims that it verified

9

both diplomas from primary sources. *Id.* It did not, however, verify

Akoda's purported certificate of registration as a physician in Nigeria.

*Id.*

After he passed the required examinations, ECFMG issued

"Akoda" a certificate in 1998. *See* JA275. "Akoda" then entered a

residency program at Jersey Shore Medical Center (JSMC). JA276.

ECFMG sent a permanently validated ECFMG certificate for Akoda to

JSMC. *See id.*

**ECFMG learns Akoda and Igberase are the same person.**

In August 2000, JSMC notified ECFMG it was investigating

whether Akoda had used a Social Security number issued to Igberase.

*See* JA279. ECFMG sent Akoda a "charge letter" advising it had

received information alleging he may have engaged in irregular

behavior and demanded a written explanation within fifteen days. *See*

JA284–85. Akoda admitted he used the Social Security number of his

"cousin" Igberase Oluwafemi Charles. *See* JA287.

Akoda met with William Kelly, Manager of ECFMG's Medical

Education Credentials Department. This was not the first time Kelly

had met Igberase/Akoda: Kelly attended a hearing on the revocation of

Igberase's certificate, where Igberase testified. JA365. Igberase again admitted he had used his cousin's Social Security number, and presented a purported Nigerian passport and "international driving permit." JA289, 358. ECFMG did not verify the documents. JA671.

In December 2000, ECFMG learned that JSMC dismissed Akoda from its residency program, because he had used a false Social Security number and provided JSMC with two inconsistent green cards. JA291.

In a December 22, 2000 memorandum that Kelly intentionally left out of "Akoda's" official file, Kelly stated he and the director of JSMC's residency program believed that Igberase and Akoda were the same person. JA293. Somehow, Kelly did not think there was enough information to refer the matter to the ECFMG's Credentials Committee for investigation. *Id.* Had the Committee known, Kelly acknowledges, it would have investigated and charged Akoda with "providing false information to ECFMG on an application, among other things," JA366, as it did after Igberase's initial fraudulent application in his own name and subsequent application under the "Charles" identity. Kara Corrado, ECFMG's corporate designee, agreed that "as a general rule after a

11

charge letter was sent, the matter was referred to the credentials

committee as a matter of course." JA 4655.

> **ECFMG nonetheless represents to Howard University's residency program, the State of Maryland, and Prince George's Hospital Center that "Akoda" has a valid ECFMG certificate.**

In October 2006, Akoda used ECFMG's Electronic Residency

Application System (ERAS) to apply for residency at Howard University

Medical Center. The application included three purported letters of

reference. JA295. Although not part of the ERAS process (JA367), Kelly

undertook to verify the letters' authenticity (JA297), because he

doubted Akoda's credibility (JA367). He never received responses from

the supposed authors. JA675. Kelly never notified anyone outside the

organization of his concerns (JA676–77), and ECFMG did not

investigate the matter further (JA675). As a result, ECFMG's

submissions on Akoda's behalf did not express any doubt or

qualification as to the legitimacy of his certification or credentials.

Later, ECFMG verified Akoda had a valid ECFMG certificate to

the Maryland Board of Physicians and Prince George's Hospital Center

(PGHC). JA4266. In 2011, Akoda obtained privileges and became a

member of the medical staff at PGHC. JA312. He began seeing patients there in 2011. JA100 at ¶ 30.

ECFMG never notified any residency program, hospital, or other entity of the concerning information it had obtained regarding Igberase/Akoda's character and fitness—and the conclusions it drew from that information—until law enforcement became involved. JA676–77.

### Igberase faces six felony charges and pleads guilty to one.

Law enforcement contacted ECFMG regarding Akoda in approximately 2015. JA676 at 18. ECFMG had not investigated the matter further since his residency application. JA675. In 2016, officers executed search warrants at Igberase's residence, medical office and vehicle. JA100. They found fraudulent or altered immigration documents, medical diplomas, medical transcripts, letters of recommendation and birth certificates. *Id*.

Igberase was charged with six felony counts. JA319. On November 15, 2016, Igberase signed a plea agreement admitting to felony misuse of a Social Security number to obtain a medical license. JA313.

In 2017, the United States District Court for the District of
Maryland sentenced Igberase to six months incarceration, followed by
probation. JA101 at ¶ 37. PGHC terminated his privileges and the
Maryland Board of Physicians revoked "Akoda's" medical license. *Id.* at
¶¶ 38–39.

**Plaintiffs suffer emotional harm.**

Plaintiffs claim a common injury: wrongful touching of their
bodies based on the false pretense that Igberase/Akoda was a properly
credentialed physician. This injury occurred as a result of ECFMG's
negligence in certifying Igberase/Akoda and in failing to notify hospitals
and medical boards when it knew Igberase had obtained the Akoda
certification through fraud.

The named Plaintiffs suffered injuries representative of those
suffered by numerous class members:

- Desire Evans: Igberase touched Ms. Evans's clitoris during
  her labor, claiming he needed to do so to help her push.
  JA1270. She is afraid to seek medical care for her and her
  child, and has lost trust in the medical system. JA1278.

- Elsa M. Powell: Igberase provided prenatal care to Ms.
  Powell. Igberase repeatedly made inappropriate advances
  and comments, including stating her breasts were "nice."
  JA1174. Igberase delivered Ms. Powell's baby. JA1174. The
  delivery was complicated by significant bleeding requiring

14

additional medical care. JA1306. She trusted that Igberase was a duly licensed and credentialed physician and suffered emotional harm upon learning that the individual she trusted to touch the most intimate parts of her body and deliver her baby had lied about his identity and background. *Id.*

- Jasmine Riggins: Igberase provided Ms. Riggins prenatal care and delivered her baby. JA1143. She suffered severe abdominal pain and could not have her tubes tied because of scarring. JA429. After learning the truth about Igberase from a Facebook group, "Embracing Mommies," Ms. Riggins felt angry, sad, embarrassed, and ashamed about receiving treatment from Igberase. JA436, JA443. She was deeply affected by what Igberase did, and felt outraged because his dishonesty enabled him to perform C-sections, examine women's genitals, touch and violate them. JA456.

- Monique Russell: Igberase delivered Ms. Russell's baby by emergency C-section. JA394. She learned of Igberase's guilty plea from a Department of Justice press release. Ms. Russell read the federal sentencing transcript. JA359–96. She feels Igberase violated her and has difficulty going to the gynecologist, distrusts the medical community, and distrusts institutions that credential doctors. JA403. Ms. Russell also suffers from intimacy issues and anxiety, and feels like a victim of sexual assault because Igberase examined her vagina under false pretenses. JA415, JA417.

A report provided by psychiatrist Annie Steinberg, M.D., Clinical Professor at the Perelman School of Medicine, incorporating information from responses to a questionnaire completed by 306 of approximately 500 former patients of Igberase whom Class Counsel represent, revealed that nearly half of participants felt uncomfortable

during Akoda's exams and over 89 percent suffered emotional distress from Akoda's conduct and/or from learning that he practiced medicine under false pretenses. JA182, 580, 585, 587.

Because none of Igberase's patients knew his true identity or of his fraudulent background and conduct (JA102 at ¶¶ 44–45), they could not give informed consent to be touched by him (*id.* at ¶ 46). On many occasions, Igberase committed battery by touching and digitally penetrating patients without consent and on false pretenses, and by conducting examinations of a sexual nature. *Id.* at ¶ 47. He also used inappropriate language. *Id.*

### Class Certification

In December 2018, named Plaintiffs Russell, Riggins, Powell, and Evans sued ECFMG in the Court of Common Pleas of Philadelphia, asserting claims of negligence and negligent infliction of emotional distress on behalf of a putative class. JA102; JA91–125. ECFMG removed the case to the United States District Court for the Eastern District of Pennsylvania. JA83–88.

After substantial discovery, Plaintiffs filed a Motion for Class Certification in the district court. JA167–198. The Motion sought

certification under Federal Rule of Civil Procedure 23(c)(4) of a class of "all patients examined and/or treated in any manner by Oluwafemi Charles Igberase (a/k/a Charles J. Akoda, M.D.)." JA182–83. Specifically, the motion sought certification of "liability for the causes of action of the class members: negligence ... and negligent infliction of emotional distress," or, in the alternative, certification of nine class issues, including the four ultimately certified by the district court. JA182–83.

Following extensive briefing and oral arguments, the district court certified an issue class under Rule 23(c)(4), comprising all patients treated by Igberase since he entered Howard in 2007. JA25–53. The certification identified four issues for classwide resolution: (1) whether ECFMG undertook or otherwise owed a duty to class members; (2) whether ECFMG undertook or otherwise owed a duty to hospitals and state medical boards, such that ECFMG may be held liable to class members pursuant to Restatement (Second) of Torts § 324A; (3) whether ECFMG breached any duty that it owed to class members; and (4) whether ECFMG breached any duty that it owed to hospitals and state medical boards. JA53.

17

**First Appeal (ECFMG I)**

ECFMG took an interlocutory appeal pursuant to Rule 23(f). As to the district court's Rule 23(a) findings, ECFMG appealed only its findings on typicality and adequacy. Appellant's Br., 2020 WL 5352387, at 18–27 (3d Cir. Sept. 20, 2020). This Court rejected ECFMG's argument on these two elements, *see Russell,* 15 F.4th at 271 & n.4, and did not otherwise suggest the district court should reevaluate its Rule 23(a) findings. As this Court found, a party must show that issues proposed for certification satisfy Rule 23(a) and are " 'maintainable under Rule 23(b)(1), (2), or (3).' " *Russell*, 15 F.4th at 267 (citation omitted). Rule 23(b)(3) permits a class action to be maintained where "questions of law or fact common to class members predominate over any questions affecting only individual members," and a class action would be "superior to other available methods for fairly and efficiently adjudicating the controversy." Per the Court, "Rule 23(a) and Rule 23(b) decide if the proposed issues *can* be brought or maintained as class action, while the *Gates* factors determine whether they *should*." *Russell*, 15 F.4th at 270.

As the Third Circuit held, "[t]he [district] [c]ourt correctly observed that *Gates* does not require Plaintiffs seeking issue-class certification to prove that their cause of action as a whole satisfies Rule 23(b)(3)." *Id.* at 271. It unequivocally adopted the majority, or "broad," view of the relationship between Rules 23(b)(3) and Rule 23(c)(4), according to which predominance and superiority must be satisfied as to the issues proposed for certification. *See id*; *see also id.* at 273–74.

This Court ultimately reversed the district court, however, finding that "[t]wo reasons, each independently sufficient, support the conclusion that the District Court misapplied *Gates* when it certified for class treatment the duty and breach elements of Plaintiffs' negligent infliction of emotional distress claim." *Russell v. Educ. Comm'n for Foreign Med. Graduates*, 15 F.4th 259, 271 (3d. Cir. 2021) (emphasis added). The two errors in certifying Plaintiffs' negligent infliction of emotional distress claim identified by the district court were:

1.    "[T]he District Court did not determine whether the duty and breach elements of Plaintiffs' claim satisfied Rule 23(b)(3)." *Id.*

2.    "[T]he Court also failed to rigorously consider several *Gates* factors," namely:

19

      a.  "the effect certification of the issue class will have on the effectiveness and fairness of resolution of remaining issues" and

      b.  "what efficiencies would be gained by resolution of the certified issues." *Id.* at 272.

The Court's opinion intimated, however, that predominance and superiority could be satisfied:

> It is true that deciding if the Commission had a duty to investigate requires balancing several factors. *Id.* <u>But none of that requires individual evidence, for each patient shared the same distanced relationship of trust with the Commission. Likewise, breach would require only common evidence:</u> How much investigating did the Commission do? Did it know or should it have known that Igberase was a fraud? Did it take enough steps to investigate him based on warnings received from various parties, including the New Jersey residency program? Should it have followed up in later years once Igberase was admitted to another residency program? <u>No absent class member would have anything special to add in her individual trial. There will be plenty left for individual proceedings, but these major issues could be resolved on a class-wide basis.</u>

*Id.* at 273 (emphasis added).

The Court asked the district court to "explicitly discuss whether *[sic]* the effect certification of the issue class will have on the effectiveness and fairness of resolution of remaining issues." The sole concern the Court identified in this connection is whether ECFMG will

face "undue pressure to settle even if their breach did not cause Plaintiffs' harm." *Russell*, 15 F.4th at 272.

Later, however, this Court's opinion rejects the notion that issue classes will unfairly pressure ECFMG into settling with Plaintiff. The Court rejected as "overblown" amicus Chamber of Commerce's contention that the district court's ruling would encourage "a flood of abusive class actions." *Id.* at 275. As it explained, "even if a lawyer could obtain a quasi-declaratory ruling on a subset of common issues, the transformation of the case from a proposed class action to a set of individualized proceedings would spoil any settlement leverage that the lawyer had." *Id.*

Strictly speaking, this Court vacated only the district court's certification of issues in Plaintiffs' negligent infliction of emotional distress claim—not its accompanying certification of issues in Plaintiffs' negligence claim. *See Russell*, 15 F.4th at 275 ("For these reasons, we vacate the District Court's Order certifying for aggregate treatment the duty and breach elements of Plaintiffs' negligent infliction of emotional distress claim, and remand for further proceedings consistent with this opinion.").

21

ECFMG then petitioned for a writ of certiorari, seeking review of this Court's embrace of the broad view of issue-class certification. The Supreme Court denied the petition. 142 S.Ct. 2706.

**Proceedings on remand**

After remand, the district court ordered supplemental briefing on class certification in light of this Court's opinion in *ECFMG I*. The district court also permitted Defendant to brief dispositive and *Daubert* motions as to the claims of the four named Plaintiffs. The parties submitted two rounds of simultaneous briefing on the class certification issues (JA2234–2279, JA4514–4549), and briefed the summary judgment and *Daubert* issues (JA2254–4271). Oral argument on all the foregoing was set but cancelled without explanation by the district court. JA4.

The district court did not address class certification and did not address Defendant's *Daubert* motions. It issued a memorandum opinion and order that dismissed all of Plaintiffs' claims on two grounds: (1) Pennsylvania would not recognize a cause of action for negligent infliction of emotional distress under the circumstances presented; and (2) Plaintiffs could not satisfy the element of proximate cause for either

22

a negligence claim or a negligent infliction of emotional distress claim.

JA5–24. The district court's analysis on these points is discussed in

greater detail below in the context of Appellants' argument.

Petitioner noted a timely appeal. JA1.

## SUMMARY OF ARGUMENT

In finding that no reasonable juror could conclude ECFMG's

conduct was a proximate cause of Plaintiffs' injuries, the district court

erred in relying on inapposite case law and failing to appreciate the

factual dimension of ECFMG's ongoing involvement in permitting IMGs

like "Akoda" to obtain necessary licenses and qualifications to practice

medicine. The district court concluded that ECFMG could not have been

a proximate cause because other entities, such as the Howard

University residency program, hospitals, and state medical boards, had

their own due diligence procedures. Their conduct, in the district court's

view, cut off ECFMG's negligence. What the district court failed to

appreciate, however, is that these other entities *relied on ECFMG* in

performing due diligence. ECFMG provided not only the initial

certification that enabled Akoda to be eligible to attend a residency

program, it also helped him apply to residency programs, and

23

represented to subsequent licensing boards and hospitals to which he applied for credentials that he had a valid ECFMG certificate. As the foregoing narrative attests, ECFMG should have and did know better. Its continuing involvement in giving a stamp of approval to Akoda's credentials throughout his "medical career" made all the difference in enabling Igberase/"Akoda" to come into contact with women like the Plaintiffs in this action. The memorandum's cramped view of the facts and reliance on inapposite cases led the district court to an erroneous conclusion.

The district court also erred in finding that no Pennsylvania court would recognize a cause of action for negligent infliction of emotional distress under the circumstances. It failed to appropriately recognize that Defendant's conduct is actionable because Plaintiffs' damages are directly traceable to the Defendant's conduct, regardless of any lapse in time between that conduct and the injuries suffered. The district court also erred in concluding Plaintiffs were not in the zone of danger under governing case law, and did not recognize that none of the historical concerns for limiting recovery apply here.

## STANDARD OF REVIEW

On review of a ruling on a motion for summary judgment, this Court has a "plenary" standard of review, meaning it "review[s] anew the District Court's summary judgment decisions, applying the same standard it must apply." *Ellis v. Westinghouse Elec. Co., LLC*, 11 F.4th 221, 229 (3d Cir. 2021). To prevail, ECFMG as the moving party must show a lack of genuine dispute as to any material fact and entitlement to judgment as a matter of law. *Id.* at 229–30. The Court's review "is generally constrained to the questions certified for review by the district court, [though it] may consider any grounds justifying reversal." *Id.* at 229 (quoting *Morris v. Hoffa*, 361 F.3d 177, 196 (3d Cir. 2004) (emphasis and quotation omitted)).

## ARGUMENT

**I.   The district court erred in granting summary judgment on proximate cause grounds, because it misapprehended essential facts about the ongoing role of ECFMG in enabling Igberase/"Akoda" to have access to patients, and relied on inapposite authority.**

Proximate cause is established by a determination that negligent conduct of a defendant is a substantial factor in producing an injury, meaning "whether the injury would have been foreseen by an ordinary

person as the natural and probable outcome of the act complained of."
*Lux v. Gerald E. Ort Trucking, Inc.*, 2005 PA Super 400, ¶ 15, 887 A.2d
1281, 1287 (2005). The concept is essentially a limiting principle that
functions as "shorthand for the policy-based judgment that not all
factual causes contributing to an injury should be legally cognizable
causes." *Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 675 (3d Cir.
2016) (quoting *CSX Transp., Inc. v.* McBride, *564* U.S. 685, 131 S.Ct.
2630, 2642, 180 L.Ed.2d 637 (2011)).

This Court has given the following example to illustrate the
difference between proximate cause and but-for causation:

> A clear example of a "but-for" cause of an injury that is not
> its proximate cause is if a cab is late in picking up a fare and,
> while taking the fare to his destination, is involved in an
> accident while being driven without any negligence or excess
> speed. The driver's tardiness would be a but-for cause of the
> accident because the accident would not have happened if the
> cab had been on time for if it had been on time it would not
> have been at the scene of the accident. Nevertheless, the
> driver would not be liable on a theory that he was late,
> because his lateness would not be regarded as a proximate
> cause of the accident.

*Ramara, Inc.*, 814 F.3d at 675. It is well established that a "substantial
factor need not be ... the only factor" in bringing about the relevant

26

harm. *Jefferson Bank v. Progressive Cas. Ins. Co.*, 965 F.2d 1274, 1284 (3d Cir. 1992).

Claims brought on the basis of negligent performance of an undertaking, like this one, "relax the degree of certitude normally required of plaintiff's evidence in order to make a case for the jury as to whether a defendant may be held liable for the plaintiff's injuries: Once a plaintiff has introduced evidence that a defendant's negligent act or omission increased the risk of harm to a person in plaintiff's position, and that the harm was in fact sustained, it becomes a question for the jury as to whether or not that increased risk was a substantial factor in producing the harm." *Hamil v. Bashline*, 481 Pa. 256, 269, 392 A.2d 1280, 1286 (1978).

Proximate cause is generally a question for the jury. As this Court has observed, relying on Pennsylvania law, "[t]he determination of whether the conduct of the defendant was a substantial cause or an insignificant cause of plaintiff's harm should not be taken from the jury if the jury may reasonably differ as to whether the conduct of the defendant was a substantial cause or an insignificant cause." *Jefferson Bank*, 965 F.2d at 1285 (quoting *Ford v. Jeffries,* 474 Pa. 588, 379 A.2d

111, 114 (1977)). In Pennsylvania, "the fact that some other cause concurs with the negligence of the defendant in producing an injury does not relieve the defendant from liability unless he can show that such other cause would have produced the injury independently of his negligence." *Hamil*, 481 Pa. 256, 266, 392 A.2d 1280, 1285 (1978).

In deciding ECFMG's motion for summary judgment on proximate cause, the district court used factors derived from section 433 of the Restatement (Second) of Torts to determine whether ECFMG's conduct was a substantial factor in bringing about the harm suffered by Plaintiffs. The district court identified these factors as "(a) the number of other factors which contribute in producing the harm and the extent of the effect which they have in producing it; (b) whether the actor's conduct has created a force or series of forces which are in continuous and active operation up to the time of the harm, or has created a situation harmless unless acted upon by other forces for which the actor is not responsible; [and] (c) lapse of time." (Mem. Op. 15.) The district court erred in applying each of these prongs, as described below.[1]

---

[1] Note that the district court never concluded that intervening forces were superseding causes of the harm. In any event, such a conclusion would be incorrect—and the issue would, at any rate, be one for the

28

A.    <u>The analysis of prong (a) fails to consider the "other factors" were dependent on and combined with ECFMG's negligence to produce the outcome.</u>

The district court's conclusion rests on an erroneous perception

that ECFMG's negligence with respect to Akoda ended in 1996, and

that separate and independent due diligence processes by other

institutions, such as hospitals, residency programs, and medical boards

unfolded thereafter. As the opinion reads:

> A lengthy chain of causal events separates ECFMG's alleged conduct and Plaintiffs' emotional distress. Mr. Igberase decided to defraud various entities by submitting false materials and lying about his background. Other entities evaluated Mr. Igberase and concluded he was fit to practice medicine in the United States. . . . None of these entities

---

jury. *See Straw v. Fair*, 2018 PA Super 125, 187 A.3d 966, 995 (2018) ("Two or more causes may contribute to and thus be the legal or proximate cause of an injury. Further, and relatedly, where an act or force "actively operates in producing harm to [the plaintiff] after [the defendant's] negligent act [ ] has been committed," that intervening force does not necessarily relieve the defendant of liability. Restatement (Second) of Torts § 441. Instead, for an act to break the causal chain and relieve the defendant of liability, the act must be "so extraordinary as not to have been reasonably foreseeable. In such a case, the act constitutes a "superseding cause" and, "by its intervention, [the act] prevents the [defendant] from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about." "A determination of whether an act is so extraordinary as to constitute a superseding cause is normally one to be made by the jury.") (citations omitted).

> detected Mr. Igberase's fraud, even though they conducted background investigations and assessed his medical skill.

JA 19.

In reality, ECFMG's negligence did not end in 1996, but was ongoing for nearly two decades thereafter. The district court's opinions overlooked that ECFMG's negligence is not "separate" from the conduct of the other institutions. Rather, it *was central to the due diligence processes of these other institutions*. Those institutions relied on ECFMG to ensure that Akoda had the credentials he said he had. *See supra* at 3–7; *see also* JA3959–68. Those institutions requested and received certification reports from ECFMG attesting that Akoda had a valid ECFMG certification. Receipt of valid ECFMG certification satisfied an institution's obligation to ensure primary source verification of credentials. *See supra* at 3–7; *see also* JA4037–38. In short, ECFMG's negligence was hardly complete in 1996. Rather, at each step along the way of his "medical career" in the United States—with each application for a residency program, state medical licensure, or hospital privileges—ECFMG represented (falsely) to the requesting institution that Akoda was appropriately certified.

This portion of the Court's opinion relies on inapposite authority, *Commerce Bank/Pennsylvania v. First Union Nat. Bank*, 911 A.2d 133, 140–42 (Pa. Super. Ct. 2006). (Mem. Op. 16–17.) *Commerce Bank* concerned a lawsuit between two banks arising from the operation of a check-kiting scheme by CF Foods. *Id.* at ¶¶ 1–4. CF Foods first conducted the scheme at First Union, which declined to take any action or issue a suspicious activity report. *Id.* at ¶ 2. CF Foods then approached Commerce Bank to open an account there. *Id.* at ¶ 3. (The record reveals no relationship between the two.) Commerce asked CF Foods to provide a banking history. CF Foods did, using information from its account at First Union. *Id.* Commerce opened an account for CF Foods. *Id.* Within weeks, it noted that CF Foods was operating a check kiting scheme on its account at Commerce as well. *Id.* It issued a suspicious activity report and took action to limit activity on the account. *Id.* Shortly thereafter, CF Foods collapsed, causing Commerce to suffer significant losses. *Id.*

Commerce sued First Union, alleging that First Union's failure to issue a suspicious activity report proximately caused its losses. *Id.* at ¶ 4. The superior court disagreed, finding, among other things, that

31

Commerce had failed to establish proximate cause. *Id.* at ¶¶ 20–25. The superior court affirmed the trial court's rejection of Commerce's theory of causation—in which it claimed that First Union was responsible because it had failed to close GF Foods's account, which would have caused it to collapse before it was able to open an account at Commerce—as mere but-for causation, rather than causation "of a type that reasonable people would consider fair, natural, and probable." *Id.* at ¶¶ 21–23. The superior court held that First Union's conduct was "only one minor factor" in the "chain of events" leading to the second check-kiting scheme, and that "[o]ther, far more significant, factors" included four independent events:

> (1) CF Foods' independent decision to approach Appellant for a business account; (2) Appellant's own decision to open an account for CF Foods based on the First Union account, apparently without further background checks; (3) CF Foods' check-kiting action on Appellant's account; and (4) Appellant's failure to detect CF Foods' check-kiting any earlier than it did.

*Id.* at ¶ 23.

Here, the circumstances are distinct. As described above, the "other factors"—the other entities that made decisions enabling Akoda

to practice medicine—were not independent of ECFMG, but rather depended on ECFMG in reaching their decisions about Akoda.

In *Commerce Bank*, First Union did not make any representations to other entities concerning CF Foods; rather, CF Foods provided information regarding its account at First Union to Commerce Bank. Thus, the four "other, far more significant factors" were, in fact, independent. But here, the other factors did not operate independently of ECFMG; rather, they relied on ECFMG. Per the above and the report of Plaintiffs' health care administration expert, Dr. David Markenson, "[Akoda] was licensed to practice medicine in Maryland and Virginia, and was granted privileges at Prince George's Hospital Center based on application and submission of required documentation including an ECFMG certificate." JA4183. ECFMG repeatedly communicated with residency programs, hospitals, and state medical boards that Akoda was appropriately certified, when he was not. Moreover, ECFMG's relationship vis-à-vis these other health care actors is hardly that of two independent banks. Rather, its entire reason for existence is to perform such work on behalf of hospitals and state medical boards and residency programs.

B.  <u>The analysis of prong (b) failed to consider that ECFMG
operated as a continuing force that advanced Akoda's
involvement in the medical system, not a "situation
harmless unless acted upon by other forces for which the
actor is not responsible."</u>

The district court erred in concluding that, because ECFMG

certification alone did not enable Akoda to practice medicine and other

entities "had independent discretion," its conduct was harmless. This is

incorrect. As described above, the other entities—hospitals, residency

programs, and medical boards—*relied on* ECFMG in exercising their

discretion. They *relied on ECFMG* in their decisionmaking as to

whether to permit Akoda to practice medicine. ECFMG continued to

represent to those entities Akoda was appropriately certified, which

satisfied those entities' obligations of primary source verification.

Moreover, as described above, Akoda could not have practiced medicine

in the United States without initial ECFMG certification.

ECFMG was not only the beginning of the chain of causation that

permitted Akoda to practice medicine in the United States. It was also

part of each link along that chain. Each successive residency program,

medical licensing board, or hospital relied on ECFMG in conducting

their investigations of Akoda. ECFMG certification was the cornerstone

34

of Akoda's fraudulent practice of obstetrics and gynecology in the
United States. Hence, the district court erred in finding that ECFMG's
negligent certification was a "situation harmless unless acted upon by
other forces for which the actor is not responsible."

C.    The court also erred in analyzing prong (c), as no legally
      sufficient lapse of time bars a finding that ECFMG was a
      proximate cause of Plaintiffs' injuries.

The district court mistakenly found that ECFMG's negligent
involvement in Akoda's fraud-based involvement in the medical system
began in 1997 and ended in 2000. The opinion reads, "ECFMG certified
Mr. Igberase in 1997 and it failed to act in response to JSMC's request
for an investigation in 2000. Mr. Igberase did not treat the Plaintiffs
until August 2012, and they did not experience any emotional distress
until 2017. . . . A lapse of six years suggests an absence of proximate
cause. . . . The decade-plus lapse in this case leads to that same
conclusion." (Mem. Op. 18.)

In fact, there is no "decade-plus lapse." As described above,
ECFMG coordinated Akoda's application to the Howard University
medical residency program in 2006. It represented to that program,
hospitals, and medical boards, each time Akoda applied to them, that he

had a valid ECFMG certification. This continued until at least 2011,

when Akoda applied to Prince George's Hospital Center for hospital

privileges. Akoda began treating the Plaintiffs in August 2012.

Even if the Court were to determine a meaningful lapse of time

had occurred, the six-year cut off for lack of proximate cause is arbitrary

and not supported by the case law cited. Although a six-year period is

discussed in the language cited from *Brown v. Philadelphia College of

Osteopathic Medicine*, 674 A.2d 1130 (Pa. Sup. Ct. 1996), nothing in

that decision turns on the six-year period with respect to proximate

cause.

In short, the district court's finding as to causation is contrary to

extensive record evidence, including the reports or testimony of three

expert witnesses. *See supra* at 3–7. Proximate cause is an issue for the

jury here.

## II. The district court erred in finding that Pennsylvania would not recognize Defendant's negligent infliction of emotional distress on Plaintiffs by enabling Igberase's sexual assaults.

Several theories allow a plaintiff to recover emotional damages in

the absence of physical damages. Until 1970, this was limited to

situations where the emotional impact was accompanied by some sort of

36

"physical impact." *Niederman v. Brodsky*, 261 A.2d 84 (Pa. 1970). That year, Pennsylvania expanded this to include those plaintiffs in a "zone of danger." *Id.* In 1979, this was expanded further, to a plaintiff who "witnessed an accident causing serious injury to a close family member." *Toney v. Chester Cnty. Hosp.*, 614 Pa. 98, 107, 36 A.3d 83, 89 (2011) (citing *Sinn v. Burd*, 486 Pa. 146, 404 A.2d 672 (1979)) (Baer, J., in support of affirmance by an equally divided court).

The trial court here, however, concluded that, because much of Plaintiffs' emotional harm took place when they learned about Defendant's role and Igberase's identity, instead of at the time of the assaults, Plaintiffs cannot recover emotional damages. (Ord. at 10 ("To maintain such a claim, the emotional impact must be contemporaneous with the event that causes it.") This is in error. Emotional damages are recoverable where they are the direct and proximate result of a defendant's negligence. Plaintiffs' emotional damages are a direct and proximate result of Defendant's negligence. Whether under traditional negligence principles, a "zone of danger" theory, or some other theory, Pennsylvania would recognize Plaintiffs' claims.

It is well established that a plaintiff "is entitled to recover for
fright or emotional distress" if they "receive[] physical injury or physical
impact to any degree, no matter how slight." *Zelinsky v. Chimics*, 175
A.2d 351, 353 (Pa. Super. 1961). A "physical impact" occurs "where . . . a
plaintiff sustains bodily injuries, *even though trivial* or minor in
character, which are accompanied by fright or mental suffering directly
traceable to the peril in which the defendant's negligence placed the
plaintiff, then mental suffering is a legitimate element of damages."
*Niederman v. Brodsky*, 261 A.2d 84, 86 (Pa. 1970) (quoting *Potere v.
Philadelphia*, 112 A. 2d 100, 104 (Pa. 1955)) (emphasis original).
Neither party nor the trial court disputes that Plaintiffs have received
physical impacts and suffered emotional distress. However, the trial
court concluded that, because the emotional distress was not entirely
contemporaneous with the assaults, Plaintiffs' claims must fail. (Ord. at
10 ("To maintain such a claim, the emotional impact must be
contemporaneous with the event that causes it.") (citing *Doe v.
Philadelphia Cmty. Health Alternatives AIDS Task Force*, 745 A.2d 25,
28 (Pa. Super. Ct. 2000)). According to the trial court, " 'a plaintiff who

alleges [NIED] must suffer immediate and substantial physical harm.' "
(Ord. at 10 (quoting *Doe*, 745 A.2d at 28).) This was in error.

First, some emotional distress was clearly contemporaneous with
Igberase's assaults. In one instance, Igberase "fingered [a plaintiff's]
clitoris." JA3955. The emotional impact of such an assault would have
been "immediate and substantial," even if Defendant's role in that
assault would not have been sufficiently clear to begin the running of
limitations.

Further, there is no requirement that damage be immediate so
long as it is "directly traceable to the peril in which the defendant's
negligence placed the plaintiff." *Stoddard v. Davidson*, 513 A.2d 419
(Pa. Super. 1986) (quoting *Potere v. City of Phila.*, 112 A.2d 100, 104
(Pa. 1955)). Indeed, in *Potere*, "as here, the impact was not directly with
the defendant, nor did it occur simultaneously with the negligent act."
*Id.* (citing *Potere*, 112 A.2d at 104). There, "the city negligently
maintained a water line which leaked water into an underground
tunnel dug by a contractor which caused subsidence and a cave-in of the
road while plaintiff was driving a truck on it." *Id.* (citing *Potere*, 112
A.2d at 104). There, as here, the defendant set in motion a negligent

39

chain of events which resulted in the infliction of emotional distress
caused, at least in part, by an impact.

The common element is that the plaintiff's "fright or mental
suffering [is] directly traceable to the peril in which the defendant's
negligence placed the plaintiff, then mental suffering is a legitimate
element of damages." *Niederman*, 261 A.2d at 86. There, as here,
negligent infliction of emotional distress is a viable theory.

Defendant has objected that the cause of the emotional damage is
the discovery of its negligence (and Igberase's true identity), not the
impact itself. This is irrelevant, as Pennsylvania courts have noted that
a " 'plaintiff can recover for any damages which resulted from the
accompanying fright, even though the impact had no causal connection
with the fright-induced injuries.' " *Cherkes v. Abbott Lab'ys*, 45 Pa. D. &
C.3d 603, 607 (Pa. Com. Pl. 1986) (quoting *Niederman*, 261 A.2d at 86)
(emphasis removed).

Here, the impact is a major cause or factor of the emotional
distress. In the cases cited by the trial court, the physical impacts were
symptoms of the emotional distress. For example, in *Doe v.
Philadelphia Cmty. Health Alternatives AIDS Task Force*, 745 A.2d 25,

28 (Pa. Super. Ct. 2000), which the trial court cites for the proposition
that ("a plaintiff who alleges [NIED] must suffer immediate and
substantial physical harm," the physical impacts were testing and
treatment related to a mistaken HIV diagnosis. *Id.* at 26. There, the
Court specifically noted that the impact requirement was *not* met. *Id.* at
29.

The difference between *Doe* and another fear of AIDS case,
*Shumosky*, is illustrative. In *Shumosky v. Lutheran Welfare Servs. of
Ne. PA, Inc.*, 784 A.2d 196, 198 (Pa. Super. Ct. 2001), the plaintiff was a
nurse who was stuck by a needle first used on a patient with AIDS. The
plaintiff never developed AIDS, and was not immediately informed that
her patient was an AIDS patient. *Id.* Instead, the plaintiff was only
informed at the end of her shift that she may have been exposed to
AIDS, and the emotional damages stemmed from this discovery. *Id.*
This emotional damage was not "immediate" to the physical injury—it
only came along later because of the *Defendant's* negligent conduct in
concealing the contents of the needle. *Id.*

Here, *Defendant's* negligent conduct in concealing Igberase's
credentials harmed Plaintiffs. Just as in *Shumosky*, the Plaintiffs knew

41

immediately that they had been touched. Just as in *Shumosky*, it was

Defendant's negligence that stopped them from learning just how

offensive this touching had been until later. The Pennsylvania courts

would not hold it against the Plaintiffs that, *due to Defendant's*

negligence, they suffered a delayed *emotional* reaction to a patently

offensive touching.

Thus, where the impact requirement is met, the damage need not

be immediate upon impact—only contemporaneous with, and caused by,

Defendant's negligence. The district court erred in concluding

otherwise.

## III.    The trial court erred in concluding that Plaintiffs were not in the clear zone of danger.

When Pennsylvania adopted the "zone of danger" rule, the Court

held that permitting recovery for emotional distress in the absence of

physical impact presented no insurmountable challenge to establishing

medical causation and no appreciable risk of fictious or fraudulent

claims. *Niederman v. Brodsky*, 261 A.2d 84, 90 (Pa. 1970). The Court

noted that a fear of "an avalanche of claims" was neither justified, nor

an appropriate basis to restrict access to justice for those who have

42

suffered a substantial wrong. *Id.* Plaintiffs have suffered a substantial

wrong at Defendant's hands.

Plaintiffs (and, in some instances, their newborns)[2] underwent life

threatening and intensively private gynecologic and obstetric

procedures by an imposter, operating under a fictious identity with

fictitious and fraudulently obtained credentials. This conduct, which

occurred as a direct and proximate result of Defendant's failure to carry

out its gatekeeping role with respect to IMGs, presented substantial

risk of physical harm to the Plaintiffs, given the potential for serious

medical complications. Upon realizing this conduct occurred, which they

did not do immediately because of Defendant's negligence, the Plaintiffs

suffered severe emotional distress.

Recognizing "the gravity of appellant's injury and the inherent

humanitarianism of our judicial process and its responsiveness to the

current needs of justice," the Court did away with strict application of

the impact rule, and allowed recovery for substantial wrongs.

*Niederman*, 261 A.2d 85. Plaintiffs here are similarly entitled to relief.

---

[2] Igberase's unconsented-to touching of some Plaintiffs' minor children in front of them squarely puts those cases in the ambit of cases like *Sinn v. Burd*, 404 A.2d 672 (1979).

**IV.    The trial court erred in concluding that Pennsylvania's Supreme Court would not rule in Plaintiffs' favor, as none of the historical concerns for limiting recovery apply here.**

Setting aside that Plaintiffs clearly fit into the pre-existing categories for recovery of emotional damages, the Supreme Court of Pennsylvania would recognize the negligent infliction of emotional distress here. "[I]t is fundamental to our common law system that one may seek redress for every substantial wrong. The best statement of the rule is that a wrong-doer is responsible for the natural and proximate consequences of his misconduct." *Sinn v. Burd*, 486 Pa. 146, 155, 404 A.2d 672, 677 (1979) (quoting *Niederman*, 261 A.2d at 85). And, as the Court has learned, "the zone of danger requirement can be unnecessarily restrictive and prevent recovery in instances where there is no sound policy basis supporting such a result." *Id.*

In that vein, the Court has recognized that conventional tort principals of foreseeability will provide the necessary limits on the scope of a defendants' liability. *Niederman v. Brodsky*, 261 A.2d 84 (Pa. 1970); *Sinn v. Burd*, 404 A.2d 672 (Pa. 1996).

Defendant has committed a substantial wrong, opening hundreds or thousands of women to sexual assault and medical malpractice by an

44

imaginary doctor created by Defendant's negligence. It was highly foreseeable to ECFMG that its negligence would result in emotional distress on the part of patients subjected to treatment from unqualified individuals, particularly those practicing as OBGYNs. Part of ECFMG's mission in certifying foreign medical graduates to practice medicine in the United States is to promote public health and to protect the public.

Everyone, from the States of Pennsylvania and Maryland to the hospitals involved to the plaintiffs themselves relied on Defendant out of necessity. Defendant is the sole entity responsible for ensuring that persons claiming foreign medical credentials are who they say they are and actually have the credentials they claim to have. JA4033, 4036. Defendant learned that it was credentialing a fraudster with more than enough time to deny, cancel, or revoke that credentialing. JA4061, 4068–49. As indicated above, Defendant knew or should have known "Akoda's" true identity and appreciated the risk he posed to patients.

No one else could have done what Defendant could have done. A reasonable juror could find that a reasonable person in Defendant's position would have not given Igberase a certificate to enable him to fraudulently masquerade as a gynecologist and sexually assault women.

45

A reasonable juror could also find that general negligence principles clearly support imposition of liability on Defendant.

Plaintiffs were deeply and irrevocably harmed by Defendant's negligence. Plaintiffs " 'seek redress' " for this " 'substantial wrong.' " *Sinn*, 404 A.2d at 677 (quoting *Niederman*, 261 A.2d at 85). The Pennsylvania Supreme Court would recognize their claim and give them the opportunity to prove it.

## V.    Maryland law does not shield Defendant from liability.

Defendants have consistently sought application of Maryland law to its Pennsylvanian conduct. Pennsylvania has a strong interest in regulating the conduct of its domiciliary corporations by applying its substantive tort law, and other jurisdictions have no interest in applying their own law if, as the Defendants claim, doing so would limit their citizen's right to recover for the benefit of a foreign corporation. *Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 187–88 (3d Cir. 1991).

The district court concluded that Pennsylvania law applied to the claims. In the event this Court held otherwise, Plaintiffs would still prevail. Although Maryland does not nominally recognize negligent infliction of emotional distress as a distinct claim, Maryland permits

46

recovery for emotional distress arising out of negligence, and the same

result would ensue under Maryland or Pennsylvania law.[3] *Hamilton v.*

*Ford Motor Credit Co.*, 502 A.2d 1057, 1066 (Md. Ct. Spec. App. 1986)).

Damages for emotional distress are available in Maryland where there

has been a physical impact, such as damages arising out of the

provision of medical care, as here, or in the absence of a physical

impact, where a Plaintiff has suffered an injury that is "capable of

objective determination." *See, e.g.*, *Vance v. Vance*, 408 A.2d 728, 733–

34 (Md. 1979) (upholding damages for spouse's distress in discovering

her marriage was void); *Faya v. Almaraz*, 620 A.2d 327, 337-39 (Md.

1993) (holding that patients of a surgeon who did not disclose he had

AIDS, but who did not themselves become infected with HIV, could

nonetheless recover for their mental and emotional distress they

experienced between the time they learned of the physician's HIV-

positive status and the time they learned they were not infected); *Hunt*

*v. Mercy Med. Ctr.*, 121 Md. App. 516, 537-38 (1998) (holding that a

---

[3] Similarly, it is important to note that, even if Plaintiffs could not bring
a viable NIED claim, which they can, they would be entitled to prevail
under their negligence cause of action and the general negligence
principles identified here and *supra*.

plaintiff mistakenly misdiagnosed with cancer may recover emotional

distress damages).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this

Court reverse the judgment of the district court.

Respectfully submitted,

Dated: <u>September 8, 2022</u>

JANET, JANET & SUGGS,
LLC

<u>*/s/ Patrick Thronson*</u>
  Patrick A. Thronson
  Brenda A. Harkavy
  4 Reservoir Circle, Suite
  200
  Baltimore, MD 21208
  (410) 653-3200

CONRAD O'BRIEN PC
  Nicholas M. Centrella
  Robin S. Weiss
  1500 Market Street, Suite
  3900
  Philadelphia, PA 19102-
  2100
  (215) 864-9600

LAW OFFICES OF PETER G.
ANGELOS, P.C.
  Paul M. Vettori
  One Charles Center
  100 N. Charles Street, 20th Floor
  Baltimore, Maryland 21201
  (410) 649-2000

SCHOCHOR AND STATON, P.A.
  Scott Kurlander
  The Paulton
  1211 St. Paul Street
  Baltimore, Maryland 21202
  (410) 234-1000

Z LAW, LLC
  Cory L. Zajdel
  2345 York Rd. Suite B-13
  Timonium, MD 21093
  (443) 213-1977

THE COCHRAN FIRM
  Karen Evans
  David Haynes
  1666 K Street NW
  Suite 1150
  Washington, DC 20006
  (202) 682-5800

*Attorneys for Appellants*

## CERTIFICATE OF BAR MEMBERSHIP, COMPLIANCE WITH TYPE-VOLUME LIMITATION AND TYPEFACE REQUIREMENTS, AND VIRUS CHECK

I, Patrick A. Thronson, counsel for Appellees, certify, pursuant to Local Appellate Rule 28.3(d), that I am a member in good standing of the Bar of this Court.

I further certify, pursuant to Federal Rules of Appellate Procedure 32(a)(5)–(7), and Local Appellate Rule 31.1(c) and 32.1(c), that the foregoing Brief of Appellees Monique Russell, Jasmine Riggins, Elsa M. Powell, and Desire Evans, on behalf of themselves and all others similarly situated, is proportionately spaced and has a typeface of 14-point Century Schoolbook, contains 10,701 words, and that the text of the electronic brief is identical to the text of the paper copies.

I further certify, pursuant to Local Appellate Rule 31.1(c), that Bitdefender Endpoint Security did not detect a virus in this filing.


Dated: <u>September 8, 2022</u>                    */s/ Patrick Thronson*
                                                  Patrick A. Thronson

## CERTIFICATE OF SERVICE

I hereby certify that on September 8, 2022, the foregoing Brief of Appellees Monique Russell, Jasmine Riggins, Elsa M. Powell, and Desire Evans was filed with the Clerk of Court for the U.S. Court of Appeals for the Third Circuit through the Court's CM/ECF system. All counsel of record are registered CM/ECF users

William R. Peterson
Morgan, Lewis & Bockius, LLP
1000 Louisiana St., Suite 400
Houston, TX 77002

Brian W. Shaffer
Matthew D. Klayman
Morgan, Lewis & Bockius, LLP
1701 Market Street
Philadelphia, PA 19103

Dated: <u>September 8, 2022</u>

<u>*/s/ Patrick Thronson*</u>
Patrick A. Thronson

51