# No. 22-1998

## In the United States Court of Appeals
## For the Third Circuit

MONIQUE RUSSELL; JASMINE RIGGINS;
ELSA M. POWELL; DESIRE EVANS,
*Appellants*

v.

EDUCATIONAL COMMISSION FOR
FOREIGN MEDICAL GRADUATES,
*Appellee*

On Appeal from the United States District Court for the
Eastern District of Pennsylvania
Case No. 2:18-cv-05629

## BRIEF OF APPELLEE

MORGAN, LEWIS & BOCKIUS LLP
    Brian W. Shaffer
    Elisa P. McEnroe
    Matthew D. Klayman
1701 Market Street
Philadelphia, PA 19103
(215) 963-5000

MORGAN, LEWIS & BOCKIUS LLP
    William R. Peterson
1000 Louisiana St., Ste. 4000
Houston, TX 77002
(713) 890-5188

*Counsel for Appellee, Educational Committee for Foreign Medical Graduates*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 and Third Circuit Local Appellate Rule 26.1, Appellees Educational Commission for Foreign Medical Graduates make the following disclosure:

(1)    For nongovernmental corporate parties, please list all parent corporations:

*None*

(2)    For nongovernmental corporate parties, please list all publicly held companies that hold 10% or more of the party's stock:

*None*

(3)    If there is a publicly held corporation which is not a party to the proceeding before this Court but which has as a financial interest in the outcome of the proceeding, please identify all such parties and specify the nature of the financial interest or interests:

*None*

4)    In all bankruptcy appeals counsel for the debtor or trustee of the bankruptcy estate must list: (1) the debtor, if not identified in the case caption; (2) the members of the creditors' committee or the top 20 unsecured creditors; and, (3) any entity not named in the caption which is an active participant in the bankruptcy proceeding. If the debtor or trustee is not participating in the appeal, this information must be provided by appellant.

*Not applicable*

Dated:  November 23, 2022                 *s/ William R. Peterson*
                                          William R. Peterson
                                          *Counsel for Appellees*

# TABLE OF CONTENTS

**Page**

Corporate Disclosure Statement ..................................................................i

Table of Authorities ..................................................................................v

Statement of the Issues............................................................................1

Statement of Related Cases......................................................................2

Statement of the Case.............................................................................3

Summary of the Argument.......................................................................16

Argument.............................................................................................19

I.      The District Court Correctly Enforced Pennsylvania's Limits on Recovery for Emotional Distress...................................................19

         A.    Plaintiffs' alleged emotional distress was not accompanied by a contemporaneous physical impact.............................20

             1.    Plaintiffs cannot invent new claims based on "emotional distress" that occurred at the time of treatment....................................................22

             2.    Plaintiffs' reliance on the principle that the negligent act and emotional distress need not be simultaneous is misplaced. ...............................................24

             3.    Plaintiffs did not suffer ongoing fear of exposure to a disease. ......................................................24

         B.    Plaintiffs do not allege emotional distress from their fear from being in the zone of danger of a physical impact.................27

         C.    Federal courts, sitting in diversity, must apply state law....................28

# TABLE OF CONTENTS
## (continued)

**Page**

II.  The District Court Correctly Held that ECFMG's Conduct Was Not a Proximate Cause of Plaintiffs' Emotional Distress. ...........................30

    A.  Because of the lengthy causal chain, number of other factors, and lapse of time, ECFMG's conduct was not a "substantial factor" in Plaintiffs' harm. ...............................................30

        1.  Numerous other factors contributed to Plaintiffs' alleged emotional distress. ........................................31

        2.  ECFMG's certification was not sufficient to enable Dr. Akoda to treat patients. ........................................36

        3.  Significant time passed between ECFMG's certification and Dr. Akoda treating Plaintiffs. ........................37

    B.  Plaintiffs' theory of a "relaxed" causation standard is meritless..................................................................................38

III.  This Court Can Affirm on the Ground that ECFMG Did Not Owe a Duty to Plaintiffs.................................................................................40

    A.  A negligent-undertaking claim is limited to the defendant's specific undertaking and cannot expand to a higher level of generality. .............................................................................41

    B.  ECFMG undertook to primary-source verify Dr. Akoda's diploma and ensure testing of his basic competency. .........................42

    C.  Plaintiffs cannot expand ECFMG's duty from its specific undertakings to a general duty of "credentialing."...............................44

    D.  Plaintiffs have not relied and cannot rely on ECFMG's investigation as an undertaking that would give rise to a duty. ...................................................................................46

# TABLE OF CONTENTS
### (continued)

**Page**

IV.  This Court Can Affirm on the Ground that Plaintiffs Consented to Their Medical Treatment. ...............................................................49

Conclusion & Prayer for Relief ................................................................54

Certificate of Bar Membership, Compliance with Type-Volume Limitation and Typeface Requirements, and Virus Check.........................................55

Certificate of Service ...............................................................................56

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Albany Urology Clinic, P.C. v. Cleveland,*
  528 S.E.2d 777 (Ga. 2000) ..................................................................52

*Botek v. Mine Safety Appliance Corp.,*
  611 A.2d 1174 (Pa. 1992) ...................................................................21

*Bowman v. Home Life Ins. Co. of Am.,*
  243 F.2d 331 (3d Cir. 1957) ...............................................................49

*Brown v. Phil. Coll. of Osteopathic Med.,*
  674 A.2d 1130 (Pa. Super. Ct. 1996)...................................................21

*Brown v. Phillip Morris, Inc.,*
  250 F.3d 789 (3d Cir. 2001) .........................................................38, 46

*Caban Hernandez v. Philip Morris USA, Inc.,*
  486 F.3d 1 (1st Cir. 2007).............................................................34, 35

*Cherkes v. Abbott Lab'ys,*
  45 Pa. D. & C.3d 603 (Pa. Com. Pl. 1986).........................................22

*Com. v. Gregory,*
  1 A.2d 501 (Pa. 1938).........................................................................50

*Commerce Bank/Pennsylvania v. First Union Nat. Bank,*
  911 A.2d 133 (Pa. Super. 2006) ...................................................35, 36

*Dews v. Dimensions Health Corp.,*
  CAL 17-37091 (Prince George's Cty. Cir. Ct., Md.)...........................2

*Dews v. Dimensions Health Corp.,*
  CAL 17-37091 (Prince George's Cty. Cir. Ct., Md.).........................10

*Doe 56 v. Mayo Clinic Health Sys.—Eau Claire Clinic, Inc.,*
  880 N.W.2d 681 (Wis. 2016)..................................................26, 52, 53

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Doe v. Phila. Cmty. Health Alts. AIDS Task Force*,
   745 A.2d 25 (Pa. Super. Ct. 2000)........................................................21, 25, 26

*Duttry v. Patterson*,
   771 A.2d 1255 (Pa. 2001) ..................................................................................51

*Est. of Rennick v. Universal Credit Servs., LLC*,
   No. CV 18-3881, 2019 WL 196539 (E.D. Pa. Jan. 15, 2019)............................21

*Evans v. Liberty Mut. Ins. Co.*,
   398 F.2d 665 (3d Cir. 1968) .................................................................18, 41, 42

*Ford v. Jeffries*,
   379 A.2d 111 (Pa. 1977) ....................................................................................30

*Hamil v. Bashline*,
   392 A.2d 1280 (Pa. 1978) .....................................................................17, 38, 39

*Hill v. Slippery Rock Univ.*,
   138 A.3d 673 (Pa. Super. 2016) ........................................................................47

*Kazatsky v. King David Mem'l Park, Inc.*,
   527 A.2d 988 (Pa. 1987).....................................................................................20

*Krueger Assocs., Inc. v. Am. Dist. Tel. Co. of Pa.*,
   247 F.3d 61 (3d Cir. 2001) .................................................................................47

*Kuentz v. Cole Sys. Grp., Inc.*,
   541 S.W.3d 208 (Tex. App. 2017)................................................................45, 46

*Mazzagatti v. Everingham by Everingham*,
   516 A.2d 672 (Pa. 1986)...............................................................................28, 37

*Mitzelfelt v. Kamrin*,
   584 A.2d 888 (Pa. 1990).................................................................................38, 39

*Morency v. City of Allentown*,
   No. 20-3469, 2021 WL 3719220 (3d Cir. Aug. 23, 2021) .............................34, 35

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Nicolaou v. Martin*,
    195 A.3d 880 (Pa. 2018) .................................................................23

*Niederman v. Brodsky*,
    261 A.2d 84 (Pa. 1970) ...................................................20, 21, 27

*Patentas v. United States*,
    687 F.2d 707 (3d Cir. 1982) ..........................................18, 41, 42, 45

*Potere v. City of Philadelphia*,
    112 A.2d 100 (Pa. 1955) .............................................................21, 22

*Prince v. Esposito*,
    628 S.E.2d 601 (Ga. App. 2006) .....................................................51

*Rice v. Brakel*,
    310 P.3d 16 (Ariz. App. 2013) ........................................................51

*Rice v. Diocese of Altoona-Johnstown*,
    255 A.3d 237 (Pa. 2021) .................................................................23

*Russell v. Dimensions Corp.*,
    CAL 17-22761 (Prince George's Cty. Cir. Ct., Md.)..........................2

*Russell v. Dimensions Corp.*,
    CAL 17-22761 (Prince George's Cty. Cir. Ct., Md.)........................10

*Russell v. Dimensions Health Corp.*,
    CAL 18-07863 (Prince George's Cty. Cir. Ct., Md.)..........................2

*Russell v. Educ. Comm'n for Foreign Med. Graduates*,
    15 F.4th 259 (3d Cir. 2021) ..............................................................2

*Sabric v. Lockheed Martin*,
    532 F. App'x 286 (3d Cir. 2013) ....................................................47

*Schmidt v. Boardman Co.*,
    11 A.3d 924 (Pa. 2011) ...................................................................21

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Sempier v. Johnson & Higgins,*
45 F.3d 724 (3d Cir. 1995) ..................................................................19

*Sheridan v. NGK Metals Corp.,*
609 F.3d 239 (3d Cir. 2010) ..........................................................16, 19

*Shumosky v. Lutheran Welfare Servs. of Ne. PA, Inc.,*
2001 WL 34383627 (Pa. Super. Ct. 2001) ..........................................25

*Shumosky v. Lutheran Welfare Servs. of Ne. PA, Inc.,*
784 A.2d 196 (Pa. Super. Ct. 2001) ....................................................24

*Sinn v. Burd,*
404 A.2d 672 (Pa. 1979) ........................................................27, 28, 29

*Stoddard v. Davidson,*
513 A.2d 419 (Pa. Super. Ct. 1986) ....................................................22

*Taylor v. Johnston,*
985 P.2d 460 (Alaska 1999) ..........................................................18, 51

*TD Bank N.A. v. Hill,*
928 F.3d 259 (3d Cir. 2019) ................................................................17

*Three Aces Towing, Inc. v. Landrum,*
No. 21-0652, 2022 WL 4393007 (Tex. Sept. 23, 2022)......................42

*Toney v. Chester Cnty. Hosp.,*
36 A.3d 83 (Pa. 2011) ....................................................................20, 29

*Toney v. Chester Cnty. Hosp.,*
961 A.2d 192 (Pa. Super. Ct. 2008)....................................................21

*Travelers Indem. Co. v. Dammann & Co.,*
594 F.3d 238 (3d Cir. 2010) ................................................................16

*Turbe v. Gov't of Virgin Islands,*
938 F.2d 427 (3d Cir. 1991) ................................................................47

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Unglo v. Zubik,*
 29 A.3d 810 (Pa. Super. 2011) .......................................................47

*United States v. Igberase,*
 No. 8:16-cr-00277-PWG (D. Md.) .....................................................2

*Vattimo v. Lower Bucks Hosp., Inc.,*
 465 A.2d 1231 (Pa. 1983) ...........................................................30

*Williams v. Guzzardi,*
 875 F.2d 46 (3d Cir. 1989) ..........................................................21

**STATUTES**

Pa. Stat. § 422.2 .......................................................................4

Va. Code
 § 54.1-2902 ...........................................................................4
 § 54.1-2903 ...........................................................................4

**RULES**

Fed. R. Civ. P.
 23.............................................................................2, 12, 13
 56....................................................................................34
 83....................................................................................34

**OTHER AUTHORITIES**

Restatement (Second) of Torts
 § 55..................................................................................49
 § 323..............................................................................39, 41
 § 324A.............................................................................*passim*
 § 431.................................................................................30
 § 433.................................................................................31
 § 892B................................................................................49

Wolson, J., Policies and Procedures § II.B.4 .........................................34

## STATEMENT OF THE ISSUES

1.    Plaintiffs have asserted claims for emotional distress that they allegedly suffered when they learned information about their doctor years after he treated them.  Did the district court correctly hold that Pennsylvania's limits on recovery for emotional distress foreclose Plaintiffs' claims?  JA17-18, 2305.

2.    After Appellee ECFMG certified the individual who treated Plaintiffs as having met certain minimum criteria, he attended and graduated from a residency program, was licensed to practice medicine by multiple state boards, was certified as a specialist, and was hired by medical practices.  Did the district court correctly hold that ECFMG was not a proximate cause of Plaintiffs' alleged emotional distress?  JA18-21, 2320-21.

3.    ECFMG fully satisfied its only undertakings regarding the individual who treated plaintiffs: (1) to primary-source verify his diploma with the issuing institution; and (2) to confirm that he passed three examinations.  Did ECFMG owe any additional legally cognizable duty to Plaintiffs?  JA2307-16.

4.    Plaintiffs consented to—and received—medical treatment from an individual who was licensed to practice medicine.  Does Plaintiffs' consent foreclose their claims against ECFMG or does Plaintiffs' belief that their doctor should not have been licensed vitiate their consent?  JA2324-26.

1

## STATEMENT OF RELATED CASES

This case was previously before this Court on petition for review of an order granting class certification pursuant to Rule 23(c)(4). *See Russell v. Educational Comm'n for Foreign Med. Graduates*, 15 F.4th 259 (3d Cir. 2021), *cert. denied*, 142 S.Ct. 2706 (2022).

In November 2016, a guilty plea for misuse of a Social Security number was entered in *United States v. Oluwafemi Charles Igberase, a/k/a "Charles John Nosa Akoda,"* No. 8:16-cr-00277-PWG (D. Md.).

Plaintiffs Monique Russell and Jasmine Riggins filed two putative class actions against Dimensions Health Corporation (and other defendants) that are related to this case. *Russell v. Dimensions Corp.*, CAL 17-22761 (Prince George's Cty. Cir. Ct., Md.); *Russell v. Dimensions Health Corp.*, CAL 18-07863 (Prince George's Cty. Cir. Ct., Md.). Those cases were consolidated with another putative class action brought by Plaintiffs Desire Evans and Elsa Powell, *Dews v. Dimensions Health Corp.*, CAL 17-37091 (Prince George's Cty. Cir. Ct., Md.). All were voluntarily dismissed after the defendants moved for summary judgment.

**STATEMENT OF THE CASE**

The Educational Commission for Foreign Medical Graduates ("ECFMG") is a Philadelphia-based private non-profit organization that promotes quality health care for the public.  JA2818.  Among other services, ECFMG certifies graduates of international medical schools as having met certain criteria to enter U.S. graduate medical education (usually residency programs).  *Id.*

The certification provided by ECFMG conveys specific and limited information.  At the relevant time, ECFMG certified that: (1) an applicant received passing grades on an English exam and two substantive exams (the first two steps of the United States Medical Licensing Examination ("USMLE")); and (2) ECFMG had primary-source verified the diploma provided by an applicant by asking the issuing medical school to confirm its authenticity.  JA2818-19.

ECFMG does not make any additional representations regarding an applicant.  In particular, ECFMG does not (and is not expected to) verify an applicant's identity, Social Security number, immigration status, passport information, criminal background, readiness to treat patients, ethics, honesty, morality, or character.  JA2819-2820.  Institutions that receive ECFMG certificates "independently assess the[se] criteria."  JA2819-21; JA3918.

ECFMG does not report its certifications to the general public.  It discloses certification information only to residency programs, licensing boards, and

3

organizations that employ physicians.  JA2819.  There is no evidence in this case that any recipient of ECFMG's certification misunderstood its limited scope, expected ECFMG to certify additional information, or relied on ECFMG's certification for purposes for which it was not intended.

### ECFMG Certifies Doctor Akoda Because He Passed the Required Examinations and ECFMG Primary-Source Verified His Diploma

Plaintiffs are four individuals who received medical treatment from an obstetrician/gynecologist licensed to practice medicine as "John Nosa Akoda," who was issued a certificate from ECFMG in 1997.  JA2826.  They filed suit on behalf of a putative class of individuals who he treated.  JA93-125.

ECFMG followed its ordinary process in certifying Dr. Akoda.[1]  He passed the English examination and two substantive examinations.  JA2826.  And he presented to ECFMG a medical school diploma in his name from the University of Benin, a Nigerian medical school.  ECFMG primary-source verified this diploma with the University of Benin, which confirmed its legitimacy.  JA2825 (citing JA3027-3032).

---

[1] This brief refers to the individual who treated Plaintiffs as "Doctor Akoda." Because "John Akoda" was licensed to practice medicine in Maryland and Virginia when he treated Plaintiffs, JA2829, he is properly referred to as "doctor."  *See* Va. Code §§ 54.1-2902, 54.1-2903 (limiting the use of "Doctor" to persons with "a valid unrevoked license issued by the Board"); *see also* 63 Pa. Stat. § 422.2 (defining "medical doctor" as "an individual who has acquired one of the following licenses to practice medicine and surgery").

ECFMG thus certified Dr. Akoda.  To recipients of his certification status, ECFMG's certification (truthfully) represented that he passed the examinations and that the University of Benin verified the diploma.

After obtaining ECFMG certification, Dr. Akoda successfully:

- passed Step 3 of the USMLE, JA2826;

- applied and was admitted to and completed a residency program at Howard University Hospital, JA2828;

- became licensed to practice medicine in Maryland and Virginia, JA2829;

- was awarded hospital privileges at Prince George's Hospital Center, JA2830;

- was hired by multiple medical offices, JA2831; and

- achieved board certification in his specialty, *id.*

All of this occurred before Dr. Akoda treated Plaintiffs.

### *The Maryland Board of Physicians Takes No Action Against Dr. Akoda*

Before entering the Howard University Hospital residency program, Dr. Akoda entered a residency program at Jersey Shore Medical Center in 1998. JA2826.  When Jersey Shore attempted to verify the Social Security number that Dr. Akoda provided in his residency paperwork, it concluded that it belonged to an individual named Charles Igberase.  JA2827.  In 2000, Jersey Shore discharged Dr. Akoda from the residency program because of perceived discrepancies involving his Social Security number and green card.  JA2828.  The green card was not part of Dr. Akoda's application to ECFMG.  *Id.*

Jersey Shore shared only limited information with ECFMG, JA2827, and following an investigation—in which Dr. Akoda addressed those discrepancies when ECFMG inquired and provided supporting hard-copy documentation to ECFMG, JA287, JA289—ECFMG determined that some of Jersey Shore's information was inaccurate and that there was insufficient evidence to refer Dr. Akoda to the Medical Education Credentials Committee of the ECFMG Board of Trustees. JA2828.

Jersey Shore also appears to have reported its suspicion that Dr. Akoda's application for medical licensure included an incorrect Social Security number to the Maryland Board of Physicians. JA806.

In 2007, Dr. Akoda applied and was admitted to the residency program at Howard University Hospital. JA2828. He provided Howard University a false permanent resident card in the name "N. Akoda, John Charles." *Id.* Dr. Akoda successfully completed his Howard University residency in 2011. *Id.*

That same year, Dr. Akoda was licensed by the Maryland Board of Physicians and the Virginia Board of Medicine. JA2829 (citing JA3044, JA3084). Dr. Akoda's application for licensure in Maryland required that if his name was "not written the same way on all documents," he had to "submit documentation to explain how and why [his] name differs." JA2829 (citing JA3088). Dr. Akoda's name appeared differently on his licensure application ("John Charles Nosa

Akoda" and "Charles John Nosa Akoda"), ECFMG Certificate ("John Nosa Akoda"), medical school diploma ("Johnbull Enosakhare Akoda"), and residency program certificate of completion ("John-Charles Nosa Akoda").  JA2829 (citing JA3037, JA3042, JA3045, JA3082).  There is no evidence that the Maryland Board of Physicians required Dr. Akoda to provide documentation to explain the discrepancies, and he later admitted to providing a false permanent resident card and a false Maryland driver's license in connection with his application to the Maryland Board of Physicians.  JA2829-30.

As early as 2014, the Maryland Board of Physicians was aware of the allegations that Dr. Akoda had used other names and may have misrepresented his identity.  JA2830.  It nonetheless did not revoke Dr. Akoda's medical license at that time.

Dr. Akoda obtained privileges at Prince George's Hospital Center and worked with medical practices run by Drs. Abdul Chaudry and Javaka Moore.  JA2830-31.  Hospitals have their own requirements for credentialing physicians, generally including an interview, personal references with contact information, a current photograph, certificates of completion from all residencies and fellowships, letters of recommendation from program directors, Social Security number, valid passport or birth certificate, malpractice insurance history, licenses, a two-year case log, fingerprinting for a federal background check, and a urine drug screen.

JA2820.  Dr. Akoda submitted a false permanent residency card and a false Maryland driver's license to Prince George's Hospital.  JA2829.

Plaintiffs contend that Prince George's Hospital failed to perform an appropriate and proper investigation and background check of Dr. Akoda before granting him privileges.  JA2830.  According to Plaintiffs, had Prince George's Hospital used "reasonable care to investigate, credential, grant privileges, monitor and supervise" Dr. Akoda, his fraudulent conduct would have been discovered. JA2831.

### Dr. Akoda Pleads Guilty to Misuse of a Social Security Number

In November 2016, following a two-year investigation by the U.S. Attorney's office, Dr. Akoda pleaded guilty to misuse of a Social Security number. JA2832.  During the course of this investigation, law enforcement did not prevent Dr. Akoda from practicing medicine.  Indeed, in 2014, as part of ECFMG's cooperation with the government, ECFMG was instructed by federal authorities not to take adverse action against Dr. Akoda for fear of impeding the government's ongoing investigation.  JA2832.[2]

In the guilty plea, Dr. Akoda admitted that he had previously applied to ECFMG under two different names: Oluwafemi Charles Igberase in 1992 and

---

[2] Notably, this occurred before Dr. Akoda treated Ms. Evans or Ms. Russell.

Igberase Oluwafemi Charles in 1994.[3]  JA2832 (citing JA2989).  ECFMG revoked his certificate following the guilty plea.  JA2832 (citing JA3327).

Although Dr. Akoda's motive in using a false name is unknown, one possibility is that he believed that his exam history made him a less attractive candidate and kept him from securing a residency position, and that reapplying to ECFMG using a different name would allow him to present a "cleaner" profile for new residency applications.  *See* JA2823.

Plaintiffs' counsel repeatedly inject uncertainty as to Dr. Akoda's credentials.  JA3943, 3970, 3978.  But the record is clear that the issuing university verified the diploma that Dr. Akoda presented.  JA2825 (citing JA3027-3032).  And though Dr. Akoda perpetrated a fraud in the use of his name and Social Security number, no record evidence indicates that he did not have a medical degree.[4]

### Plaintiffs Sue ECFMG for Emotional Distress

In December 2018, Plaintiffs-Appellants Monique Russell, Jasmine Riggins, Elsa M. Powell, and Desire Evans sued ECFMG in the Court of Common Pleas of

---

[3] ECFMG had previously invalidated and revoked the certificates issued under the names Igberase and Charles after determining that the individual who submitted applications under those names had violated ECFMG's rules.  JA2825.

[4] If anything, his ability to pass the certification examinations, complete a residency program, and practice medicine for years strongly indicate that he received medical training.

Philadelphia County on behalf of a putative class of "[a]ll patients examined and/or treated in any manner by Oluwafemi Charles Igberase (a/k/a Charles J. Akoda, M.D.)." JA102, 91-125.  ECFMG removed the case to federal court.  JA83-88.

ECFMG was not Plaintiffs' first choice of defendant.  In September 2017, Ms. Russell and Ms. Evans filed a putative class action against Dimensions Health Corporation (and other defendants) who operated Prince George's Hospital Center, where Dr. Akoda practiced.  *See Russell v. Dimensions Corp.*, CAL 17-22761 (Prince George's Cty. Cir. Ct., Md.).  They were represented in that matter by the same counsel that represents them before this Court.  Their case was consolidated with another putative class action against Dimensions brought by Ms. Evans and Ms. Powell.  *See Dews v. Dimensions Health Corp.*, CAL 17-37091 (Prince George's Cty. Cir. Ct., Md.).  Those lawsuits were voluntarily dismissed after the defendants moved for summary judgment.

Plaintiffs are former patients of Dr. Akoda who were treated at Prince George's Hospital Center, either because Dr. Akoda was their regular obstetrician/gynecologist or because Dr. Akoda was "on-call" at the hospital when they gave birth.  JA2832-42.

Plaintiffs do not seek recovery based on any alleged malpractice by Dr. Akoda, any misdiagnosis or improperly performed medical procedure, or any physical injuries.  Instead, the only harm for which they seek recovery is

"emotional harm" allegedly suffered when they learned that Dr. Akoda used a different name and pleaded guilty to misuse of a Social Security number. JA3943. Until this appeal, Plaintiffs have not alleged that they suffered any emotional distress at the time of their treatment by Dr. Akoda. Instead, they repeatedly and intentionally alleged that they suffered emotional distress (and thus that their claim against ECFMG accrued) when they learned of Dr. Akoda's guilty plea in late 2016. JA3950-52.[5]

The four Plaintiffs vary significantly in their treatment by and allegations against Dr. Akoda, although none has received any mental health treatment for any alleged "emotional distress" related to Dr. Akoda:

- For Ms. Russell, Dr. Akoda performed a successful emergency c-section in May 2016. JA2840. Not only does she not complain about her treatment, but she agrees that it "really was best/necessary." JA2841. She never sought any mental health treatment after learning of Dr. Akoda's guilty plea. JA2841.

- For Ms. Riggins, Dr. Akoda performed a successful elective c-section in 2013 and provided prenatal care. JA2838. She had no concerns about her treatment and no history of mental health or psychiatric treatment. JA2838-39. Ms. Riggins claims to have begun experiencing emotional distress upon coming to believe that Dr. Akoda was a "fake doctor." JA2838.

---

[5] Although some Plaintiffs contend that they also suffered offensive touching (*i.e.*, inappropriate treatment) by Dr. Akoda, before the district court, Plaintiffs repeatedly confirmed that they sought recovery only for alleged emotional distress caused by learning information about Dr. Akoda's guilty plea. JA1385, 3950-52.

- For Ms. Powell, Dr. Akoda successfully delivered her baby, performed emergency surgery, and assisted with post-natal care through January 2015.  JA2835-36.  She alleges that Dr. Akoda was flirtatious and made inappropriate comments.  JA2836.  She has no history of mental health or psychiatric treatment.  JA2837.  Ms. Powell mistakenly believes ECFMG "give[s] the license for foreigners" to "practice medicine in the United States," JA2837, and faults ECFMG for "actually provid[ing] him with a license to practice."  JA2837.

- For Ms. Evans, Dr. Akoda performed a successful emergency c-section in March 2016.  JA2833.  She alleges that he improperly manipulated her clitoris during labor.  *Id.*  Ms. Evans has extensive history of mental health treatment, both before and after encountering Dr. Akoda.  JA2834.  None of her mental health records refers to Dr. Akoda.  JA2834 (citing JA3420-43).  Ms. Evans mistakenly believes that ECFMG's purpose is "to verify identification documentation" and that ECFMG is responsible for verifying IMGs' Social Security numbers, birth certificates, green cards, state medical licenses, board certifications, and every other "piece of identifying information about a foreign medical graduate."  JA2834-2835.

### *Plaintiffs Seek Class Certification, and ECFMG Successfully Appeals*

Plaintiffs' brief discusses the previous class certification and appeal in significant detail.  Pl. Br. 16-22.  But because this appeal concerns summary judgment, not class certification, only a high-level understanding is necessary.

In March 2020, the district court certified an issue class under Federal Rule of Civil Procedure 23(c)(4), limited to four discrete issues that are part of the liability inquiry.  JA53.  ECFMG successfully appealed this class certification under Rule 23(f), and this Court vacated the certification and remanded for further consideration.  JA2206.

ECFMG petitioned the Supreme Court of the United States for a writ of certiorari regarding the interaction of Rule 23(b) and Rule 23(c)(4), but its petition was denied.

### *The District Court Grants Summary Judgment to ECFMG*

On remand, ECFMG moved for summary judgment and sought to exclude the testimony of four of Plaintiffs' purported experts. JA2280, 2334, 2542. The first was Dr. Annie Steinberg. JA2334. In response to ECFMG's motion, Plaintiffs withdrew Dr. Steinberg as an expert witness and stipulated that they "w[ould] not rely on her opinions" in this case. JA3914. Plaintiffs' brief violates this stipulation by relying on her report, Pl. Br. 15-16, and the relevant paragraph should be disregarded.

The other three experts were Dr. David Markenson, Dr. John Charles Hyde, and Dr. Jerry Williamson. JA2542. These doctors have general knowledge of the medical field but no education, experience, or other expertise qualifying them to opine on ECFMG's interactions with foreign medical graduates. JA4692-4693. All three offered impermissible legal conclusions about the duties assumed by ECFMG. JA4693-4694. And although they opined on causation, they admittedly did not consider the conduct of any other entity in the causal chain. JA4696-4697.

In its summary judgment motion, ECFMG asserted numerous grounds, including: (1) Pennsylvania law does not permit Plaintiffs to recover for emotional

distress arising from learning information about Dr. Akoda; (2) Pennsylvania law would not recognize a duty owed by ECFMG to Plaintiffs; (3) Plaintiffs failed to identify legally sufficient evidence of proximate causation; and (4) Plaintiffs' consent to the treatment they received bars their claims.  JA2305-2325.

After full briefing, Judge Wolson entered summary judgment for ECFMG on two grounds.  JA4.

First, Judge Wolson held that that Pennsylvania law does not recognize Plaintiffs' claims for emotional distress arising from learning information. Plaintiffs' medical treatment (years earlier) was not a "physical impact" sufficient to support emotional distress recovery.  JA15-16.  The emotional distress did not "accompany" the medical treatment—they were separated by years—but was "a product of reconceiving [Plaintiffs'] memories in light of new information." JA15. He also declined to apply the "zone-of-danger" exception because Plaintiffs did not "actually fear" a physical impact and thus were not in the "zone of danger." JA16-18.

Second, Judge Wolson held that based on the uncontroverted facts, ECFMG's actions were not a proximate cause of Plaintiffs' alleged emotional distress.  JA19.  Citing the "decade-plus lapse" of time (JA21), "lengthy chain of causal events separat[ing] ECFMG's alleged conduct and Plaintiffs' emotional distress" (JA19), and the fact that ECFMG's certification "was harmless unless

others, including a residency program, a state licensure board, and a hospital that offered admitting privileges, acted on it" (JA21), Judge Wolson held that ECFMG's conduct, even if it was a but-for cause of Plaintiffs' injuries, was not a proximate cause. Judge Wolson did not address ECFMG's other grounds for summary judgment.

This appeal followed. JA1.

## SUMMARY OF THE ARGUMENT

Unlike when interpreting federal law, a federal court "may not act as a judicial pioneer in a diversity case." *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 254 (3d Cir. 2010) (internal quotation marks omitted).  If there is any uncertainty about state law, federal courts must "opt for the interpretation that restricts liability, rather than expands it." *Travelers Indem. Co. v. Dammann & Co.*, 594 F.3d 238, 253 (3d Cir. 2010).

The district court correctly applied these principles in granting summary judgment in favor of ECFMG on independent and alternative grounds.  First, Pennsylvania law forecloses Plaintiffs from recovering for the emotional distress they allegedly suffered when they learned information about Dr. Akoda years after he treated them.  In Plaintiffs' words, they seek to recover for "the emotional distress that has resulted from their discovery that the individual they knew as 'Dr. Akoda' was in fact, Oluwafemi Igberase." JA3981.  Pennsylvania allows recovery for negligently inflicted emotional distress only in narrow circumstances, inapplicable here.  Their alleged emotional distress neither accompanied a physical impact nor arise from imminent fear of a physical impact.  The district court correctly granted summary judgment on this ground.

Second, independently, the district court correctly held that the uncontroverted facts demonstrated that ECFMG's alleged negligent act—its

16

certification of Dr. Akoda—was not the proximate cause of Plaintiffs' alleged injuries. Plaintiffs' treatment occurred more than a decade after ECFMG's certification and only after numerous independent actors, including a residency program, a hospital, two medical offices, and two state medical boards, failed to detect Dr. Akoda's fraud. Without these independent actors, Dr. Akoda could not have treated anyone.

Plaintiffs' assertion that these actors relied on ECFMG to verify Dr. Akoda's identify conflicts with their concession below. *See* JA2819-2821, 3918 (Plaintiffs admitting that institutions receiving ECFMG certification status reports "independently assess" a foreign medical graduate's "identity"). And their argument in favor of a "relaxed" causation standard is incorrect. *Hamil v. Bashline* concerns medical malpractice that increases the likelihood of an unfavorable outcome from a medical procedure. 392 A.2d 1280, 1287 (Pa. 1978). The case has no relevance to Plaintiffs' claims.

In addition to either ground for summary judgment relied upon by the district court, this Court can also affirm grounds not reached by the district court. *See, e.g.*, *TD Bank N.A. v. Hill*, 928 F.3d 259, 270 (3d Cir. 2019) ("We may affirm on any basis supported by the record[.]").

One such ground is the absence of duty supporting Plaintiffs' claims. Section 324A of the Restatement (Second) of Torts, on which Plaintiffs' rely,

JA4708, limits liability to the specific tasks that the defendant undertook (and on which third parties relied). *Patentas v. United States*, 687 F.2d 707, 716 (3d Cir. 1982). ECFMG's undertaking was limited to: (1) confirming that Dr. Akoda passed basic competency examinations; and (2) primary-source verifying Dr. Akoda's diploma by confirming it with the University of Benin. Plaintiffs do not attempt to show that ECFMG was negligent in performing either task, and they cannot transform ECFMG's specific undertakings into a generalized duty of appropriate credentialing. *Evans v. Liberty Mut. Ins. Co.*, 398 F.2d 665, 666-67 (3d Cir. 1968) (applying Pennsylvania law).

Finally, Plaintiffs cannot recover because they consented to medical treatment by Dr. Akoda. Plaintiffs argue that Dr. Akoda's misrepresentations about his name render their consent invalid, but not all misrepresentations vitiate consent. Plaintiffs consented to medical treatment from a licensed physician and received medical treatment from a licensed physician. Their belief that their doctor **should not** have been licensed to practice medicine does not transform their medical treatment into battery, and courts routinely reject similar claims. *E.g.*, *Taylor v. Johnston*, 985 P.2d 460, 465 (Alaska 1999). Consent bars their claims.

Any of these four grounds, independently, is a sufficient basis for this Court to affirm the summary judgment in favor of ECFMG.

**ARGUMENT**

This Court reviews the district court's grant of summary judgment *de novo*. *Sempier v. Johnson & Higgins*, 45 F.3d 724, 727 (3d Cir. 1995).

## I.    The District Court Correctly Enforced Pennsylvania's Limits on Recovery for Emotional Distress.

Pennsylvania law permits recovery of damages for negligently inflicted emotional distress in very limited circumstances.  "[T]he Pennsylvania Supreme Court has made clear that not everyone who experiences emotional trauma has a legal remedy available."  JA15.

In their opposition to ECFMG's motion for summary judgment, Plaintiffs explained that they sued ECFMG for "the emotional distress that has resulted from their discovery that the individual they knew as 'Dr. Akoda' was in fact, Oluwafemi Igberase."  JA3981.  They assert that this discovery—and their alleged distress—first occurred "when they became aware of criminal proceedings" against Dr. Akoda, JA3981, years after they received medical treatment from him.

The district court correctly held that Pennsylvania law does not allow plaintiffs to raise claims for negligent infliction of emotional distress "where they learn new information about some prior event."  JA12.  This holding applied well-established limits on the recovery of emotional distress.  Particularly given the appropriate role of a federal court sitting in diversity, *Sheridan*, 609 F.3d at 254, Plaintiffs show no error in this holding.

19

On appeal, Plaintiffs rely on two facially-inapplicable exceptions to the prohibition against recovery of emotional distress. First, Plaintiffs rely on Pennsylvania's "physical impact" rule, which allows for recovery where the emotional distress was "accompanied by a physical injury or impact upon the complaining party." *Toney v. Chester Cnty. Hosp.*, 36 A.3d 83, 88 (Pa. 2011) (Baer, J., in support of affirmance by an equally divided court) (citing *Kazatsky v. King David Memorial Park, Inc.*, 527 A.2d 988, 992 (Pa. 1987)). But Plaintiffs allege emotional distress from learning information years after their medical treatment by Dr. Akoda. There was no "physical impact." JA12.

Second, Plaintiffs contend that they satisfy the "zone-of-danger" exception, which permits recovery of emotional distress when a plaintiff (1) was in personal danger of physical impact because of the direction of a negligent force against her and (2) actually feared the physical impact. *Niederman v. Brodsky*, 261 A.2d 84, 90 (Pa. 1970). Even if Plaintiffs had preserved this argument, they do not allege emotional distress from fear of a physical impact.

This Court cannot create new theories of recovery under Pennsylvania law. The district court correctly applied these limits and granted summary judgment.

## A.   Plaintiffs' alleged emotional distress was not accompanied by a contemporaneous physical impact.

Plaintiffs did not suffer an accompanying "physical impact" that would allow them to recover for emotional distress. *See, e.g.*, *Kazatsky*, 527 A.2d at 992

(barring recovery for "emotional distress unless it was accompanied by a physical injury or impact"); *Williams v. Guzzardi*, 875 F.2d 46, 51 (3d Cir. 1989) (same); *Niederman*, 261 A.2d at 86 (noting that the rule allowed recovery, when there was an impact, for "accompanying fright"); *Potere v. City of Philadelphia*, 112 A.2d 100, 104 (Pa. 1955) (allowing recovery for "bodily injuries, even though trivial or minor in character, which are accompanied by fright or mental suffering"). The physical impact and the emotional distress must be "contemporaneous." *Schmidt v. Boardman Co.*, 11 A.3d 924, 948 (Pa. 2011) (noting recovery for "trauma derived from a contemporaneous physical impact").[6]

Here, as the district court correctly recognized, Plaintiffs' alleged "emotional distress did not accompany [their treatment by Dr. Akoda]; it arose when they learned about [his] arrest and his background." JA15. Rather than a product of physical impact, "their distress is a product of reconceiving their memories in light of new information." *Id.* They cannot recover under this theory.

---

[6] *See also, e.g.*, *Doe v. Phila. Cmty. Health Alts. AIDS Task Force*, 745 A.2d 25, 28 (Pa. Super. Ct. 2000) ("**immediate** and **substantial** physical harm") (emphasis in original); *Toney v. Chester Cnty. Hosp.*, 961 A.2d 192, 200 (Pa. Super. Ct. 2008) (same); *Brown v. Philadelphia Coll. of Osteopathic Med.*, 674 A.2d 1130, 1132, 1136 (Pa. Super. Ct. 1996) (distress when nurse placed a bloody fetus in patient's arms); *Botek v. Mine Safety Appliance Corp.*, 611 A.2d 1174, 1175, 1177 (Pa. 1992) (headaches and insomnia began while, and soon after, using a gas mask filled with carbon monoxide rather than oxygen); *Est. of Rennick v. Universal Credit Servs., LLC*, No. CV 18-3881, 2019 WL 196539, at *5 (E.D. Pa. Jan. 15, 2019) (requiring "immediate" physical harm).

Plaintiffs cite no case that undermines the district court's straightforward analysis. In *Potere v. City of Philadelphia*, for example, the plaintiff suffered physical injuries when his truck fell after the road he was driving on collapsed. 112 A.2d at 102, 104. The plaintiff was able to recover for the concurrent "fright or mental suffering" that "accompanied" his "bodily injuries." *Id.* The same is true of the other cases Plaintiffs cite. *See, e.g.*, *Stoddard v. Davidson*, 513 A.2d 419, 422-23 (Pa. Super. Ct. 1986) (emotional distress resulting from driving over a corpse); *Cherkes v. Abbott Lab'ys*, 45 Pa. D. & C.3d 603, 604 (Pa. Com. Pl. 1986) (emotional distress resulting from "serious, painful and permanent injury to [the plaintiff's] vagina" resulting from "the intravaginal loss" of a portion of a syringe). No Pennsylvania case has permitted a plaintiff to recover for emotional distress that arose years after a physical impact.

### 1. Plaintiffs cannot invent new claims based on "emotional distress" that occurred at the time of treatment.

Faced with this authority foreclosing their claims, Plaintiffs now attempt to pivot, asserting that "some emotional distress was clearly contemporaneous with" their treatment by Dr. Akoda. Pl. Br. 39; *see* Pl. Br. 42 (alleging that each Plaintiff experienced a "patently offensive touching").

Plaintiffs forfeited this theory. Below, in response to ECFMG's limitations arguments, Plaintiffs made clear that their claims were based solely on emotional distress from learning information:

> Ms. Powell . . . does not seek medical malpractice damages associated with the potentially delayed treatment of her post-partum bleeding, or any flirtatious conduct.  Instead, as with the other plaintiffs, she seeks separate damages—emotional distress damages incurred as a result of learning that 'Dr. Akoda' was a fictious persona of Oluwafemi Igberase.

JA3982; *accord* JA3981 (explaining that Plaintiffs sued for "the emotional distress that has resulted from their discovery that the individual they knew as 'Dr. Akoda' was in fact, Oluwafemi Igberase"); Pl. Br. 40 (admitting that "the cause of the [alleged] emotional damage is the discovery of . . . Igberase's true identity"). Plaintiffs cannot opportunistically change theories on appeal and seek recovery that they repeatedly disclaimed.

There is good reason that Plaintiffs disclaimed this theory below.  If Plaintiffs suffered emotional distress contemporaneous with their treatment, then their claims are barred by the two-year limitations period.[7]  A claim accrues when a plaintiff has "actual or constructive knowledge of at least some form of significant harm and of a factual cause linked to another's conduct."  *Rice v. Diocese of Altoona-Johnstown*, 255 A.3d 237, 247 (Pa. 2021).  It is unnecessary that the plaintiff be aware of "the full extent of the injury, the fact of actual negligence, or precise cause."  *Id.*; *see also Nicolaou v. Martin*, 195 A.3d 880, 893

---

[7] In addition, Plaintiffs limited themselves to this theory of emotional distress in order to seek class certification.  *See, e.g.*, JA1350 ("Plaintiffs, and all class members, are those treated by Igberase at any time who suffered emotional damage because of learning Igberase was not who he held himself out to be.").

n.14 (Pa. 2018) (a plaintiff need not have "knowledge of the cause of action associated with the harm").  Thus, if Plaintiffs' emotional distress truly began at the time of their treatment (rather than years later), limitations bars their claims.  *See* JA4567-68 (detailing the limitations argument).  For this reason, Plaintiffs strategically limited their claims to emotional distress from learning information years after they received treatment.  Pennsylvania law bars these claims.

> **2.      Plaintiffs' reliance on the principle that the negligent act and emotional distress need not be simultaneous is misplaced.**

Plaintiffs also argue that they can recover for emotional distress that does not "occur simultaneously with the negligent act."  Pl. Br. 39-40 (citation omitted).  This argument misses the mark.  Plaintiffs' claims are not foreclosed because their emotional distress was separated from alleged negligence but, as detailed above, because their emotional distress was separated from any physical impact.  *See supra* pp. 20-22.

> **3.      Plaintiffs did not suffer ongoing fear of exposure to a disease.**

Plaintiffs rely on *Shumosky v. Lutheran Welfare Services of Northeastern PA, Inc.*, which involved a nurse who was stuck by a needle used to give an injection to a patient suffering from AIDS.  784 A.2d 196, 198 (Pa. Super. Ct. 2001).  She suffered emotional distress from her fear of contracting AIDS.  *Id.*

Plaintiffs interpret the nurse's emotional distress as not beginning until she was "informed at the end of her shift that she may have been exposed to AIDS." Pl. Br. 41. This reading is far from compelled—nothing in the opinion affirmatively states that there was no emotional distress until the end of the shift,[8] and a needle stick from a patient with uncertain disease status (of any sort, including AIDS) would certainly be contemporaneously emotionally distressing.

In any event, the nurse's emotional distress began, at the latest, hours after the needle stick, and as the district court noted, the nurse had "an ongoing concern, not just a different perspective on past events," based on latent risk of a serious disease. JA15. The case offers no support for Plaintiffs' theory that Pennsylvania allows recovery when years separate the (purely innocuous) "impact" from alleged emotional distress.

The far more analogous case is *Doe v. Philadelphia Cmty. Health Alternatives AIDS Task Force*, 745 A.2d 25 (Pa. Super. Ct. 2000), *aff'd* 767 A.2d 548 (Pa. 2001) (per curiam), in which, following a blood test, the plaintiff was mistakenly told that he had tested positive for HIV. *Id.* at 26. His treatment

---

[8] The hospital did not rely on the timing of the emotional distress but instead argued that "Pennsylvania law does not recognize the fear of contracting AIDS, the increased risk of contracting AIDS, or symptoms related to the fear of contracting AIDS due to exposure of contamination as legally cognizable injuries." *See* Br. of Appellee at 9, *Shumosky v. Lutheran Welfare Servs. of Ne. PA, Inc.*, 2001 WL 34383627 (Pa. Super. Ct. 2001); *see id.* at 13 (also arguing that the nurse did not suffer sufficient physical manifestation of her emotional injuries).

included receiving two influenza vaccines, which the plaintiff argued constituted a physical "impact" that allowed him to assert claims for emotional distress. *Id.* at 28. The trial court (and court of appeals) readily concluded that this routine medical care did not constitute a "physical impact": "[W]e cannot conclude that two influenza vaccines, which were not the cause of any lasting physical or emotional effects, are sufficient to bootstrap Appellant's claim that he suffered the 'physical impact' necessary to support a claim of negligent infliction of emotional distress." *Id.* at 29.[9]

Similarly, here, Plaintiffs' (successful) medical treatment by Dr. Akoda is insufficient to constitute a physical impact necessary to allow them to recover for emotional distress arising years later. Any recovery based on alleged misconduct during Plaintiffs' medical treatment is both barred by limitations and has been repeatedly disclaimed by Plaintiffs.

\*    \*    \*

Plaintiffs' theory that any physical contact, no matter how far removed in time from subsequent emotional injuries, allows recovery for emotional distress is incorrect and would, in effect, remove any limits on this recovery. Sitting in

---

[9] Plaintiffs' description of *Doe* as involving "physical impacts [that] were symptoms of the emotional distress" is mistaken. Pl. Br. 40.

If Plaintiffs were correct, then the plaintiff in *Doe* should have been able to recover because the drawing of blood for the HIV test constituted a "physical impact" allowing for recovery of emotional distress.

diversity, the district court properly applied Pennsylvania law and held that Plaintiffs cannot recover emotional distress based on learning information.

### B. Plaintiffs do not allege emotional distress from their fear from being in the zone of danger of a physical impact.

On appeal, Plaintiffs also rely on the zone-of-danger exception, Pl. Br. 42-43, which allows a plaintiff to recover for emotional distress if she (1) "was in personal danger of physical impact because of the direction of a negligent force against [her]" and (2) "actually did fear the physical impact." *Niederman*, 261 A.2d at 90.

As an initial matter, the argument was forfeited.[10]    In responding to ECFMG's motion for summary judgment, Plaintiffs did not argue that the zone-of-danger applied, only that the reasoning behind this exception should be used to create a new, "more flexible standard," under Pennsylvania law. JA3956; *see also* JA3955 ("[T]he reasoning which permits recovery for those in the 'zone of danger' supports recovery for emotional distress damages here[.]").

Plaintiffs did not invoke the zone-of-danger exception because it is facially inapplicable. Plaintiffs allege that they suffered emotional distress from learning information about Dr. Akoda, JA3981-82, not from fearing an imminent physical

---

[10] Plaintiffs footnoted assertion (at 43 & n.2) about medical treatment of their children is also forfeited because it was not raised below. And *Sinn v. Burd* allows recovery only when a plaintiff witnesses "the death or serious injury of a child," 404 A.2d 672, 678 (Pa. 1979), which Plaintiffs did not.

impact. *See* JA16-17 ("'Fear,' by definition, implies anticipation or apprehension about what is to come. Plaintiffs did not fear the physical impact from [Dr. Akoda]. Instead, they loathe the memory of that treatment[.]" (internal citation omitted)).

Plaintiffs' brief offers no response to the district court's well-reasoned analysis. Pl. Br. 42-43. Plaintiffs do not deny that the zone-of-danger exception permits recovery only for fear of an imminent physical impact. Nor do Plaintiffs argue that their claims satisfy this requirement.

### C.  Federal courts, sitting in diversity, must apply state law.

Finally, Plaintiffs ask this Court to hold that Pennsylvania law would not limit recovery of emotional distress. Pl. Br. 44-46 (arguing that recovery of emotional distress should be limited only by "general negligence principles").

Plaintiffs' only authority for their suggestion that the Pennsylvania Supreme Court would take such a radical step is the general statement that "one may seek redress for every substantial wrong." Pl. Br. 44 (quoting *Sinn v. Burd*, 404 A.2d 672, 677 (Pa. 1979)).

No decision from the Pennsylvania Supreme Court supports Plaintiffs' expansive view. *Sinn* allows recovery only when a plaintiff witnesses "the death or serious injury of a child." 404 A.2d at 678; *see Mazzagatti v. Everingham by Everingham*, 516 A.2d 672, 677 (Pa. 1986) ("We limited our *Sinn* holding solely to

those cases in which the plaintiff alleges psychic injury as a result of actually witnessing the defendant's negligent act.")  And in the four decades since *Sinn*, the Pennsylvania Supreme Court has reaffirmed limits on the recovery of emotional distress.  As the district court noted, "the last time the Pennsylvania Supreme Court considered whether to relax the physical impact requirement and create a new category of relief, it split 3-3," and even the opinion supporting expanding liability "acknowledged that Pennsylvania law engages in line-drawing exercises in which some people who experience understandable emotional trauma cannot recover." JA17 (discussing *Toney*, 36 A.3d at 91-92); *see also Toney*, 36 A.3d at 91 ("[N]ot all breaches of duties should result in compensable emotional distress claims[.]").

Particularly in light of the split decision in *Toney* regarding a narrow expansion of recovery for emotional distress, the district court correctly recognized that there is no possibility that the Pennsylvania Supreme Court would, as Plaintiffs suggest, eliminate all limits on recovery of emotional distress.  JA17-18. If these limits mean anything, they bar claims for negligently inflicted emotional distress that arises from learning information years after medical treatment.

The district court thus properly granted summary judgment.

II.    **The District Court Correctly Held that ECFMG's Conduct Was Not a Proximate Cause of Plaintiffs' Emotional Distress.**

As the district court recognized, the uncontroverted evidence demonstrates that ECFMG's conduct—even if it breached a duty—was not a proximate cause of Plaintiffs' alleged injuries.

A.    **Because of the lengthy causal chain, number of other factors, and lapse of time, ECFMG's conduct was not a "substantial factor" in Plaintiffs' harm.**

Pennsylvania law evaluates proximate causation under the test for "legal causation" from the Restatement (Second) of Torts: "[T]he question is whether the defendant's conduct was a 'substantial factor' in producing the injury." *Vattimo v. Lower Bucks Hosp., Inc.*, 465 A.2d 1231, 1233 (Pa. 1983) (citing Restatement (Second) of Torts § 431; *Ford v. Jeffries*, 379 A.2d 111, 114 (Pa. 1977)).

Second 433 of the Restatement lists the factors relevant to determining whether conduct was a "substantial factor":

> The following considerations are in themselves or in combination with one another important in determining whether the actor's conduct is a substantial factor in bringing about harm to another:
>
> > (a) the number of other factors which contribute in producing the harm and the extent of the effect which they have in producing it;
> >
> > (b) whether the actor's conduct has created a force or series of forces which are in continuous and active operation up to the time of the harm, or has created a situation harmless unless acted upon by other forces for which the actor is not responsible;
> >
> > (c) lapse of time.

Restatement (Second) of Torts § 433.

The district court considered each of these factors and correctly concluded that all three confirmed that ECFMG's conduct was not a "substantial factor" in Plaintiffs' alleged injuries. JA18-21.

### 1. Numerous other factors contributed to Plaintiffs' alleged emotional distress.

ECFMG's primary-source verification of Dr. Akoda's diploma and confirmation that he passed the required tests was only an early step in a lengthy causal chain—involving numerous intervening third parties—that led to Plaintiffs being treated by Dr. Akoda.

After receiving certification from ECFMG in 1997, JA2826, Dr. Akoda applied and was admitted to Howard University Hospital's residency program in 2007. JA2828. As part of the application, Dr. Akoda provided "a false permanent resident card in the name "N. Akoda, John Charles." JA2828. He successfully completed the residency in 2011. JA2828.

In 2011, the Virginia Department of Health Professions and Maryland Board of Physicians both licensed Akoda to practice medicine in their respective states. JA2829. In applying for licensure in Maryland, he provided a "false permanent resident card and a false Maryland driver's license." JA2829.

In 2012, Prince George's Hospital Center awarded Akoda medical privileges to treat patients. JA2830. According to Ms. Evans in a previous lawsuit,

Dimensions Healthcare, which operated Prince George's Hospital, "failed to perform an appropriate and proper investigation and background check of Akoda before granting him privileges." JA2830. Other doctors, including Dr. Moore's and Dr. Chaudhry's practices sent patients to Dr. Akoda. JA2831.

And in 2014, Dr. Akoda was certified as a "Diplomate of The American Board of Obstetrics and Gynecology, Inc." JA3311.

The district court correctly recognized that "[n]one of these entities detected [Dr. Akoda's] fraud, even though they conducted background investigations and assessed his medical skill." JA19. "Each of those failures contributed to the events that led to [Dr. Akoda] treating each Plaintiff." *Id.* Each of these entities was far closer in the causal chain to Plaintiffs being treated than ECFMG.

The district court rightly contrasted these entities that failed to detect Dr. Akoda's fraud with Jersey Shore Medical Center (the program that dismissed Dr. Akoda), which "identified discrepancies on its own when it reviewed [Dr. Akoda's] social security number and green card (which ECFMG did not review as part of its process)." JA20. That Jersey Shore Medical Center was able to "raise a red flag shows that other entities could have done so, too." *Id.*

Plaintiffs have no serious response on appeal. Plaintiffs first assert that ECFMG's credentialing "was central to the due diligence processes of these other

institutions."  Pl. Br. 30 (emphasis omitted); *see also id.* ("Those institutions relied on ECFMG to ensure that Akoda had the credentials he said he had.").

Plaintiffs' argument misstates the record.  Other institutions did not rely on ECFMG to ensure Dr. Akoda's credentials or identity—they relied, at most, on ECFMG's certification that the issuing institution verified Dr. Akoda's diploma and that he passed the basic competency examinations.  *See supra* pp. 3-5.  Below, Plaintiffs admitted that other institutions "independently assesses" "an IMG's identity."  JA2820-2821.  ECFMG made this clear in its Statement of Undisputed Material Facts:

> 8. ECFMG Certification status reports for residency programs do not verify:
> > a. **an IMG's identity**
> > b. Social Security number
> > c. immigration status
> > d. passport information
> > e. criminal background
> > f. readiness to treat patients
> > g. ethics
> > h. honesty
> > i. morality
> > j. character
>
> . . .
>
> 11. The institution receiving the ECFMG Certification status report **independently assesses** the criteria enumerated in ¶ 8.

JA2819-2821 (emphasis added). Plaintiffs admitted these facts in their response. *See* JA3918 ("6-19. Admitted.").

The district court was entitled to rely on Plaintiffs' concession in granting summary judgment, and they cannot now retract it on appeal. *See* Pl. Br. 33 (arguing, without citation to the record, that other entities' decisions regarding Dr. Akoda "were not independent of ECFMG"). Judge Wolson's Policies and Procedures required Plaintiffs to respond to ECFMG's Statement of Undisputed Material Facts and indicate which facts were in dispute. Wolson, J., Policies and Procedures § II.B.4; *see also* Fed. R. Civ. P. 83(b). Plaintiffs are bound by their admissions below. *See Morency v. City of Allentown*, No. 20-3469, 2021 WL 3719220, at *2 n.5 (3d Cir. Aug. 23, 2021) (explaining that when a party "fails to properly address another party's assertion of fact," the court may "consider the fact undisputed" under Rule 56(e)(2)); *Caban Hernandez v. Philip Morris USA, Inc.*, 486 F.3d 1, 7 (1st Cir. 2007) (noting the "vital purpose" of similar local rules).

In any event, ECFMG's certification playing some role in other entities' decisions regarding Dr. Akoda would merely show but-for causation. Plaintiffs' arguments do not to refute the district court's (correct) conclusion that each of these numerous entities "conducted background investigations and assessed [Dr. Akoda's] medical skill," JA19, and none of them detected his fraud. Plaintiffs

cannot—and do not—deny that "[e]ach of those failures contributed to the events that led to [Dr. Akoda] treating each Plaintiff." *Id.*

The district court correctly compared these facts to those of *Commerce Bank/Pennsylvania v. First Union Nat. Bank*, 911 A.2d 133, 140-42 (Pa. Super. 2006):

> In that case, First Union failed to issue a Suspicious Activity Report based on an entity's fraudulent activity, and the entity later engaged in a check-kiting scheme with an account at Commerce Bank. The Superior Court concluded that First Union's failure was not a proximate cause of the fraud because there were too many events within the chain of causation, including (1) the entity's decision to open a second account at Commerce Bank; (2) Commerce Bank's decision to open the account based on the First Union account without further background checks; (3) the check-kiting action on the Commerce Bank account; and (4) Commerce Bank's failure to detect the scheme earlier.

> Like in First Union, ECFMG failed to detect [Dr. Akoda's] fraud, and downstream entities relied on ECFMG. But also like in First Union, those downstream entities could have conducted their own diligence, and in many respects they did. Yet they did not ferret out the truth about [Dr. Akoda]. That failure was not just because ECFMG had certified [Dr. Akoda]; it was also because their own processes failed to detect anything wrong with [Dr. Akoda's] application, character, or medical skill. That failure came despite the fact many reviewed [Dr. Akoda's] paperwork, many conducted interviews with him and with others who knew him, and many had an opportunity to evaluate his medical skill.

JA19-20 (citations omitted).

In attempting to answer *Commerce Bank*, Plaintiffs are incorrect to describe Commerce Bank's action as "independent" of First Union. Pl. Br. 33. To the contrary, Commerce Bank relied on the First Union account history to allow the

fraudster to open an account.  911 A.2d at 138.  If Commerce Bank's decision was truly "independent," as Plaintiffs erroneously suggest, there would have been no but-for causation.

The district court correctly concluded that the failures of numerous other institutions—most egregiously, the state licensing boards—were factors which contributed in producing the alleged harm.

## 2. ECFMG's certification was not sufficient to enable Dr. Akoda to treat patients.

As the district court recognized, ECFMG's certification may have been necessary for Dr. Akoda to (eventually) treat patients, but it was far from sufficient.  JA21.  To treat patients, Dr. Akoda also had to take and pass another licensing exam (USMLE Step 3), be admitted to and complete a residency program, be licensed by a state, and receive admitting privileges from a hospital.

In other words, "that certification did not result in him treating any patients" and "was harmless unless others acted upon it."  JA21.

Ultimately, Plaintiffs cannot (and do not) deny that Dr. Akoda could only treat patients because of decisions of other entities.  This factor, too, weighs against proximate causation.

### 3.    Significant time passed between ECFMG's certification and Dr. Akoda treating Plaintiffs.

The district court also recognized the extensive time that passed between ECFMG's certification and Plaintiffs' alleged emotional distress: "ECFMG certified [Dr. Akoda] in 1997 and it failed to act in response to JSMC's request for an investigation in 2000.  [Dr. Akoda] did not treat the Plaintiffs until August 2012, and they did not experience any emotional distress until 2017."  JA21.  This decade in time weighs against proximate causation.

Plaintiffs have no serious response.  They assert, without citation to the record, that "ECFMG coordinated Akoda's application to the Howard University." Pl. Br. 35.  Even if there were evidence that ECFMG "coordinated" Dr. Akoda's application to Howard University, that application was submitted in 2006, six years before Dr. Akoda treated Plaintiffs and more than a decade before any Plaintiff experienced any alleged emotional distress.  JA2990.

Plaintiffs accuse the district court of applying a "six-year cut off for lack of proximate cause."  Pl. Br. 36.  This is incorrect.  The district court merely recognized, correctly, that "[a]t some point along the causal chain, the passage of time and the span of distance mandate a cut-off point for liability."  *Mazzagatti*, 516 A.2d at 676.  The district court did not apply an arbitrary "cut off" but recognized that the decade between ECFMG's certification—the allegedly

negligent act—and Plaintiffs' alleged emotional distress further weighs against proximate causation.

*    *    *

The district court correctly held that based on the uncontroverted evidence (and Plaintiffs' concessions) each of these three factors weighs against finding proximate causation.  Summary judgment was proper.

## B.    Plaintiffs' theory of a "relaxed" causation standard is meritless.

Plaintiffs argue that they must meet only a "relaxed" causation burden.  Pl. Br. 27.  This argument was forfeited because it was never raised to the district court.  *See* JA3973-3976 (response to motion for summary judgment); JA4710-11 (sur-reply); *Brown v. Phillip Morris, Inc.*, 250 F.3d 789, 799 (3d Cir. 2001) ("[A]rguments asserted for the first time on appeal are deemed to be waived and consequently are not susceptible of review in this Court absent exceptional circumstances.").

In addition, Plaintiffs misread the authority on which they rely.  *Hamil v. Bashline*, 392 A.2d 1280, 1287 (Pa. 1978), concerns medical malpractice that increases the risk of harm to a patient who might have suffered the same treatment outcome in the absence of malpractice.  *See Mitzelfelt v. Kamrin*, 584 A.2d 888, 892 (Pa. 1990) (describing *Hamil* as "discuss[ing] what constitutes sufficient evidence to create a prima facie case of causation in a medical malpractice case in

which there was a possibility that the harm would have occurred, even in the absence of negligence"); *see also id.* n.1 ("[O]nce a patient-plaintiff shows that a physician-defendant's negligence increased the risk of harm and that harm actually occurred, sufficient evidence has been offered to submit the case to a jury." (quoting an article discussing *Hamil*)).

The holding has no application here. Plaintiffs do not allege that they suffered a negative outcome from a medical procedure and that ECFMG's actions increased the likelihood of this unfavorable result. Because they must show that ECFMG was the but-for cause of their injuries, *Hamil* is inapplicable.

Moreover, the reasoning in *Hamil* is based on Section 323(a) of the Restatement (Second) of Torts, which concerns undertakings "to render services to another" that the defendant "should recognize as necessary for the protection of the other's person or things." Plaintiffs do not allege that ECFMG rendered services to Plaintiffs. Their theory of liability relies on Section 324A of the Restatement, not Section 323. *See, e.g.*, JA4707 ("ECFMG possesses a duty to the Plaintiffs under Restatement Section 324A.").

Plaintiffs' theory of a "relaxed" causation standard misreads the authority on which they rely and has no application here. Summary judgment was properly granted, and this Court can affirm on this ground.

**III.    This Court Can Affirm on the Ground that ECFMG Did Not Owe a Duty to Plaintiffs.**

This Court can also affirm on the alternative ground, not addressed by the district court, that ECFMG did not owe any duty to Plaintiffs that was allegedly breached.

Over four years of litigation, Plaintiffs have never squarely defined the duty that they allege ECFMG breached.  For example, their response to ECFMG's motion for summary judgment articulated three different duties.  *See* JA3960 ("duty to provide appropriate credentialing of medical providers"); JA3970 ("a duty to investigate and ultimately revoke the certification"); JA3971 ("a duty to require ECFMG to revoke certifications found to have been obtained through fraud").

Plaintiffs' sur-reply in support of summary judgment clarified that the only source for the alleged duty is a theory of negligent undertaking based on Section 324A of the Restatement.  JA4708.  And their brief confirms that they assert "[c]laims brought on the basis of negligent performance of an undertaking."  Pl. Br. 27.

As ECFMG explained to the district court, a negligent undertaking claim against ECFMG cannot succeed.  JA4558-59.

**A.      A negligent-undertaking claim is limited to the defendant's specific undertaking and cannot expand to a higher level of generality.**

Section 324A of the Restatement (Second) of Torts imposes a duty to exercise reasonable care on a party "who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person."  In addition, a party owes a duty only if "(a) his failure to exercise reasonable care increases the risk of such harm, or (b) he has undertaken to perform a duty owed by the other to the third person, or (c) the harm is suffered because of reliance of the other or the third person upon the undertaking." *Id.*

This Court has described Section 324A as a "good samaritan" rule and held that it does not extend beyond the specific task undertaken: "The foundation of the good samaritan rule [Sections 323 and 324A] is that the defendant specifically has undertaken to perform the task that he or she is charged with having performed negligently."  *Patentas v. United States*, 687 F.2d 707, 716 (3d Cir. 1982).  "In other words, the scope of a good samaritan's duty is measured by the scope of his or her undertaking." *Id.*

In *Evans v. Liberty Mutual Insurance Co.*, which applied Section 324A under Pennsylvania law, a defendant inspected some machines but not the particular machine that caused the plaintiff's injury.  398 F.2d 665, 666-67 (3d Cir.

1968).  The plaintiff argued that the defendant was liable for conducting a negligent inspection.  *Id.*  The decision rejected this broader duty, holding that "absent a showing either that the defendant had undertaken to inspect the specific instrument causing the injury or to inspect the entire plant of which that instrument was a part, the employee could not recover."  *Patentas*, 687 F.2d at 716 (describing *Evans*); *see also Three Aces Towing, Inc. v. Landrum*, No. 21-0652, 2022 WL 4393007, at *1 (Tex. Sept. 23, 2022) (holding that the duty of reasonable care "is limited to that undertaking" (internal quotation marks omitted)).

Applied here, these principles make clear that any duty owed by ECFMG under Section 324A was limited to the specific tasks that it undertook to perform.

## B. ECFMG undertook to primary-source verify Dr. Akoda's diploma and ensure testing of his basic competency.

When Dr. Akoda was certified, ECFMG undertook to perform only two specific tasks.  ECFMG (1) "provide[d] primary source verification" of doctors' diplomas; and (2) "test[ed] [their] basic competence."  JA3959 (Resp. to Mot. Summ. J.).  ECFMG performed both of those tasks.

First, it is undisputed that Dr. Akoda presented ECFMG with a medical school diploma from the University of Benin.  JA2825; *see also* JA3031 (diploma). The University of Benin verified that the diploma was "authentic and correct." JA3028-29.  This was the only primary-source verification that ECFMG promised to perform in connection with Dr. Akoda's ECFMG Certification.

Second, it is undisputed that Dr. Akoda passed the English exam in August 1996, passed the USMLE Step 2 Exam in August 1996, and passed the USMLE Step 1 Exam in June 1997.  JA2826; *see also* JA3034 (letter).  This was the only testing of basic competence that ECFMG promised to confirm in connection with Dr. Akoda's ECFMG Certification.

As a result, ECFMG provided Dr. Akoda with a certification, which represented (truthfully) that he passed the examinations and presented a primary-source verified diploma.  JA3042.

ECFMG thus fully and reasonably performed the only two tasks that it undertook to perform in granting Dr. Akoda an ECFMG Certificate.  It never promised to—and did not—verify Dr. Akoda's identity, criminal history, moral character, immigration status, or any other information.  JA2819-20.

There is no evidence that any residency program, employer, or medical board misunderstood the meaning of Dr. Akoda's ECFMG Certificate.  There is no evidence that any residency program, employer, or medical board relied on ECFMG's certification as establishing anything other than primary-source verification and basic competency testing.  There is no evidence that any residency program, employer, or medical board erroneously believed that ECFMG performed different primary-source verification.

43

**C.    Plaintiffs cannot expand ECFMG's duty from its specific undertakings to a general duty of "credentialing."**

Plaintiffs have never alleged—much less attempted to submit evidence—that ECFMG failed to exercise reasonable care in the specific tasks it undertook: asking the University of Benin to primary-source verify Dr. Akoda's diploma and confirming that Dr. Akoda passed the basic competency tests.

Instead, Plaintiffs have argued that ECFMG assumed a general duty to "provide appropriate credentialing."  JA3960.  Their purported expert, John Hyde, opines that ECFMG's duties included:

- "develop[ing] or adopt[ing] written policies and procedures and checklist [sic] for the certification";

- investigating "discrepancies";

- investigating Social Security numbers;

- comparing photographs of different applicants; and

- evaluating the authenticity of passports and green cards.

JA4258.  A different purported expert opined that ECFMG had a duty to "comprehensively review an application for certification," "act as a prudent credentialing organization," and "comprehensively investigate [a] physician's background."  JA4266; *see also* Pl. Br. 6 (another purported expert asserting that ECFMG has "undertaken to provide certification services").

These assertions—in addition to being impermissible conclusions of law offered by unqualified purported experts applying unreasonable methodologies, *see*

JA2542-2568 (motion to exclude); JA4687-4699 (reply)—conflict with Section 324A, which limits duties to the specific tasks undertaken.   Here, ECFMG undertook to perform narrow, specific tasks, and it performed those tasks reasonably.   *See* JA2825-26 (noting that the University of Benin verified the presented diploma and Dr. Akoda passed the examinations). Plaintiffs cannot transform the specific tasks undertaken by ECFMG into a generalized duty of "appropriate credentialing," which it did not undertake.  *E.g.*, *Patentas*, 687 F.2d at 716.

A Texas court of appeals discussed facts similar to those of this case.   In *Kuentz v. Cole Systems Group, Inc.*, a screening company was hired by a car dealership to conduct a specific, four-part background search: (1) "a background interview"; (2) "a criminal records check"; (3) "a drug test"; and (4) "a social security verification."  541 S.W.3d 208, 216 (Tex. App. 2017).

After an employee who passed this screening murdered a coworker, plaintiffs argued that the screening company assumed a general duty to perform a reasonable background investigation.   *See id.* at 214-15 ("[A]ppellants maintain that by undertaking to perform a background screening . . . , Cole assumed a duty to refrain from a negligent investigation.").   A reasonable investigation, plaintiffs contended, would have involved "accessing the Missouri [family] courts database,"

"investigat[ing] . . . employment history," and disclosing false representations by the employee. *Id.* at 215-16.

The Texas court rejected the plaintiffs' attempt to broaden the screening company's duty from the specific services it provided into a general duty to perform background screening. *See id.* at 218 (rejecting "a duty to provide screening services beyond those its customer . . . hired Cole to provide"). Nor would actual knowledge substitute for the absence of a specific undertaking. *See id.* at 222 ("[C]ole correctly reported that Grimmett had no criminal convictions, and Mac Haik never requested that Cole conduct any additional research[.]").

Similarly, here, ECFMG had no duty to provide any screening services beyond primary-source verification of the presented diploma with the issuing institution and certifying examination passage, the specific (and only) services that residency programs, employers, and medical boards relied on it to provide.

Plaintiffs cannot, through a negligent undertaking theory, show that ECFMG assumed a duty to verify aspects of an applicant's identity that it never undertook to verify or assumed a general duty of "appropriate credentialing."

### D.    Plaintiffs have not relied and cannot rely on ECFMG's investigation as an undertaking that would give rise to a duty.

To the extent that Plaintiffs rely on ECFMG's investigations of credentialed international medical graduates as an "undertaking" that would give rise to a duty, the argument is forfeited. *See Brown*, 250 F.3d at 799 (discussing forfeiture).

Below, Plaintiffs correctly recognized that ECFMG's certification (not investigation) was the only possible "undertaking" on which a duty could be based: "ECFMG undertook to provide primary source verification, along with testing of basic competence[.]" JA3959 (Pl. Resp. Mot. Summ. J.); *accord* JA4707 (same in Pl. Sur-Reply).

Even if Plaintiffs had raised the argument, it would be meritless. There is no evidence that any failure to exercise reasonable care in investigation by ECFMG "increase[d] the risk of … harm" to Plaintiffs compared to ECFMG not investigating Dr. Akoda at all. Restatement (Second) of Torts § 324A(a); *see, e.g.*, *Turbe v. Gov't of Virgin Islands*, 938 F.2d 427, 432 (3d Cir. 1991) ("[Section] 323(a) applies only when the defendant's actions increased the risk of harm to the plaintiff relative to the risk that would have existed had the defendant never provided the services initially. Put another way, the defendant's negligent performance must somehow put the plaintiff in a worse situation than if the defendant had never begun the performance.").[11] There is no evidence that

---

[11] *See also Sabric v. Lockheed Martin*, 532 F. App'x 286 (3d Cir. 2013) (same); *Krueger Assocs., Inc. v. Am. District Telegraph Co. of Pa.*, 247 F.3d 61, 66 n.3 (3d Cir. 2001) (citing *Turbe* for the principle that a claim could not be raised under Section 324A); *Unglo v. Zubik*, 29 A.3d 810, 815 (Pa. Super. 2011) (rejecting liability because "the Diocese had not put Decedent in a worse position than before services began"). Similarly, in *Hill v. Slippery Rock University*, the incomplete testing allegedly increased the student athlete's risk of harm compared to no testing at all. *See* 138 A.3d 673, 679 (Pa. Super. 2016) ("The incomplete medical

ECFMG contractually assumed a duty owed by residency programs, employers, or medical boards to Plaintiffs. Restatement (Second) of Torts § 324A(b). And there is no evidence that residency programs, employers, medical boards, or Plaintiffs relied on ECFMG for investigatory services (as opposed to ECFMG's Certification). Restatement (Second) of Torts § 324A(c). To the contrary, the undisputed evidence shows that residency programs, employers, and medical boards relied on ECFMG only for (1) primary-source verification of a foreign medical school diploma; and (2) confirmation of passage of basic competency tests. JA2819-20. Even if Plaintiffs had preserved an argument that ECFMG undertook investigations, it would not create a duty under Section 324A.

*     *     *

This Court can thus affirm on the alternative ground that ECFMG did not owe a general duty of appropriate credentialing and that there is no evidence that ECFMG acted unreasonably in (1) asking the University of Benin to verify Dr. Akoda's diploma; or (2) confirming that Dr. Akoda passed the basic competency examinations.

---

clearance may have led Mr. Hill to believe that he was physically fit for basketball. Therefore, Appellants sufficiently alleged that [defendants] . . . increased Mr. Hill's risk of harm.").

**IV.  This Court Can Affirm on the Ground that Plaintiffs Consented to Their Medical Treatment.**

Finally, this Court can also affirm on the ground that Plaintiffs consented to their medical treatment by Dr. Akoda.  As a general matter, "consent is effective for all consequences of [an actor's] conduct." Restatement (Second) of Torts § 892B(1); *see also id.* § 55 (including the "harmful or offensive character" of the conduct).  Plaintiffs consented to medical treatment from Dr. Akoda, and they cannot recover for any alleged injuries arising merely from receiving medical treatment to which they consented.[12]

Plaintiffs argue that Dr. Akoda's misrepresentations about his name render their consent ineffective.   JA3977.   But it is black-letter law that not all misrepresentations vitiate consent.  Consent is ineffective only if it is induced "by a substantial mistake" concerning "the nature of the invasion of [the party's] interests or the extent of the harm to be expected," Restatement (Second) of Torts § 892B, or by "the harmful or offensive character of a contact," Restatement (Second) of Torts § 55.  *See Bowman v. Home Life Ins. Co. of Am.*, 243 F.2d 331, 333 n.2 (3d Cir. 1957) (applying Pennsylvania law and citing Restatement of Torts

---

[12] And to the extent that Plaintiffs allege that Dr. Akoda exceeded the scope their consent, their claims are barred by limitations because they knew that they suffered a harmful act at the time of treatment. *See infra* pp. 23-24.

Consent is, of course, not a defense to medical malpractice, *i.e.*, negligence in treatment (which Plaintiffs have not alleged), but consent means that the medical treatment does not constitute a battery.

§ 55 regarding consent); *Com. v. Gregory*, 1 A.2d 501, 505 (Pa. 1938) (consent vitiated when an individual puts "himself forth as a practitioner in medicine and surgery and assumed the title of doctor . . . when he was not in fact a licensed physician or surgeon").

Neither circumstance is present here.  Dr. Akoda undisputedly completed a residency program, was board certified in his specialty, was employed by a hospital and medical practices that provided care to Plaintiffs, and, most critically, possessed medical licenses from two states.  JA2829-2830; JA3922.  It is further undisputed that Plaintiffs actually consented to having their babies delivered by Dr. Akoda.  JA2833, JA2836; JA2838; JA2840; JA3921.[13]  Although Plaintiffs later learned that Dr. Akoda had committed Social Security fraud and was using the wrong name, JA2832, because the misrepresentation did not go to the nature of the invasion of Plaintiffs' interests or the character of the contact—Plaintiffs consented to medical treatment from a licensed physician and received medical treatment from a licensed physician—their consent was effective.

That Plaintiffs believe Dr. Akoda should not have been licensed to practice medicine does not vitiate their consent.  Courts have routinely held that misrepresentations like Dr. Akoda's—including those concerning the experience,

---

[13] Plaintiffs do not deny their actual consent, only whether Dr. Akoda's misrepresentations rendered it "invalid."  JA3921.

background, or credentials of a licensed physician—do not vitiate consent. *Taylor v. Johnston* is directly on point. 985 P.2d 460 (Alaska 1999). There, as here, a patient alleged that consent to treatment was ineffective because of the physician's fraud in obtaining a medical license. *Id.* at 464. Like Plaintiffs, Taylor argued that the doctor "improperly obtained his license by misrepresenting his credentials." *Id.* at 465. The Alaska Supreme Court held that these actions did not vitiate consent: "The fact that Ferris was licensed in Alaska at the time of the procedure defeats Taylor's claim for medical battery based on fraud." *Id.* at 466. Like Taylor, Plaintiffs have no claim because they were "not treated by someone who was falsely represented himself as licensed." *Id.* This reasoning is sound and should be followed by this Court.

Any number of cases, both in Pennsylvania and elsewhere, have reached consistent results. *See Duttry v. Patterson*, 771 A.2d 1255, 1259 (Pa. 2001) ("[I]nformation personal to the physician, whether solicited by the patient or not, is irrelevant to the doctrine of informed consent."); *Prince v. Esposito*, 628 S.E.2d 601, 604 (Ga. App. 2006) (holding that "a medical professional has no duty to disclose negative information about his personal life to patients," even if "the patient testifies that he or she would have sought treatment elsewhere upon discovering the information"); *Rice v. Brakel*, 310 P.3d 16, 20 (Ariz. App. 2013) (declining to "expand medical battery to a situation in which the surgeon fully

explains the procedure and obtains consent, but fails to disclose some other potential issue"); *Albany Urology Clinic, P.C. v. Cleveland*, 528 S.E.2d 777, 778 (Ga. 2000) ("[A]bsent inquiry by a patient or client, there is neither a common law nor a statutory duty on the part of either physicians or other professionals to disclose to their patients or clients unspecified life factors which might be subjectively considered to adversely affect the professional's performance."). We have identified no case holding to the contrary.

Plaintiffs consented to medical treatment by an individual licensed to practice medicine. They received just that. Each Plaintiff emerged from her pregnancy healthy and with a healthy child. Any misrepresentation by Dr. Akoda in connection with his credentialing process did not concern the character of his contact with Plaintiffs, and Plaintiffs' contention that Dr. Akoda should not have been licensed to practice medicine—an issue for licensing boards, not ECFMG— does not vitiate their consent or give rise to a claim. [14]

---

[14] As noted above, to the extent that Plaintiffs contend that Dr. Akoda exceeded the scope of their consent, their claims are barred by limitations. The Supreme Court of Wisconsin rejected an attempt to recharacterize a claim for wrongful medical treatment as a claim for emotional distress based on learning that the treatment was wrongful. *See Doe 56 v. Mayo Clinic Health Sys.—Eau Claire Clinic, Inc.*, 880 N.W.2d 681, 688 (Wis. 2016) ("[T]he physical injurious change occurs at the time of the touching. These boys suffered an injury when Dr. Van de Loo physically touched their genitals in an allegedly inappropriate way."). It was irrelevant that the plaintiffs may not have recognized the conduct as wrongful: "The fact the Does may not have known at the time that the touching was allegedly inappropriate or

This Court can thus affirm on the alternative basis that Plaintiffs consented to the medical care they received, and any misrepresentation by Dr. Akoda did not vitiate that consent.

---

that the manipulation of their genitals constituted the physical injurious change does not change this fact." *Id.* at 689. A plaintiff cannot evade the statute of limitations for malpractice claims by reframing the claim as seeking emotional distress for learning information: "Adopting the Does' argument in this case would eviscerate the three-year statute of limitations . . . simply by alleging his emotional distress began even decades after the allegedly unnecessary and improper treatment occurred." *Id.* at 372 n.14.

## CONCLUSION & PRAYER FOR RELIEF

For these reasons independently, this Court should affirm the grant of summary judgment in favor of ECFMG.

Dated:  November 23, 2022          Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

By:    *s/ William R. Peterson*
       William R. Peterson
1000 Louisiana St., Ste. 4000
Houston, TX 77002

       Brian W. Shaffer
       Elisa P. McEnroe
       Matthew D. Klayman
1701 Market Street
Philadelphia, PA 19103
(215) 963-5000

*Counsel for Appellee, Educational Committee for Foreign Medical Graduates*

## CERTIFICATE OF BAR MEMBERSHIP,
## COMPLIANCE WITH TYPE-VOLUME LIMITATION
## AND TYPEFACE REQUIREMENTS, AND VIRUS CHECK

I, William R. Peterson, counsel for Appellee Educational Committee for Foreign Medical Graduates, certify, pursuant to Local Appellate Rule 28.3(d) and 46.1(e), that we are members in good standing of the Bar of this Court. I certify, pursuant to Federal Rules of Appellate Procedure 32(a)(5)-(7), and Local Appellate Rules 31.1(c) and 32.1(c), that the foregoing Brief of Appellee is proportionately spaced and has a typeface of 14-point Times New Roman, contains 11,598 words, and that the text of the electronic brief is identical to the text of the paper copies. I further certify, pursuant to Local Appellate Rule 31.1(c), that Microsoft Defender Offline did not detect a virus.

Dated:  November 23, 2022          *s/ William R. Peterson*
                                    William R. Peterson
                                    *Counsel for Appellee*

## CERTIFICATE OF SERVICE

I, William R. Peterson, counsel for Appellee Educational Committee for Foreign Medical Graduates, certify that, on November 23, 2022, a copy of the foregoing Brief of Appellee was filed electronically through the appellate CM/ECF system with the Clerk of the Court.  All counsel of record in this case are registered CM/ECF users.  Pursuant to Local Appellate Rule 31.1, as amended by the April 29, 2013 order, seven copies of this brief were sent to the Clerk of the Court for delivery.


Dated:  November 23, 2022          *s/ William R. Peterson*
                                   William R. Peterson
                                   *Counsel for Appellee*