No. 22-1998

# IN THE UNITED STATES COURT
# OF APPEALS FOR THE
# THIRD CIRCUIT

MONIQUE RUSSELL, JASMINE RIGGINS, ELSA M. POWELL,
and DESIRE EVANS, on behalf of themselves and all others
similarly situated,

*Appellants,*

v.

EDUCATIONAL COMMISSION FOR
FOREIGN MEDICAL GRADUATES,

*Appellee.*

On Appeal from the United States District Court
for the Eastern District of Pennsylvania,
No. 2:18-cv-05629-JDW (Wolson, J.)

## REPLY BRIEF OF APPELLANTS

JANET, JANET & SUGGS, LLC
  Patrick A. Thronson
  Stephen C. Rigg
  4 Reservoir Circle, Suite 200
  Baltimore, MD 21208
  (410) 653-3200
  pthronson@jjsjustice.com

CONRAD O'BRIEN P.C.
  Nicholas M. Centrella
  Robin S. Weiss
  1500 Market Street, Suite 3900
  Philadelphia, PA 19102-2100
  (215) 864-9600

*Additional Counsel on Inside Cover*

LAW OFFICES OF PETER G.
ANGELOS, P.C.
  Paul M. Vettori
  One Charles Center
  100 N. Charles Street, 20th Floor
  Baltimore, Maryland 21201
  (410) 649-2000

SCHOCHOR AND STATON, PA
  Scott Kurlander
  The Paulton
  1211 St. Paul Street
  Baltimore, Maryland 21202
  (410) 234-1000

THE COCHRAN FIRM
  Karen Evans
  David Haynes
  1666 K Street NW
  Suite 1150
  Washington, DC 20006
  (202) 682-5800

Z LAW, LLC
  Cory L. Zajdel
  2345 York Rd. Suite B-13
  Timonium, MD 21093
  (443) 213-1977

***Counsel for Appellants***

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** .................................................... vi

**I.   The district court erred in finding that ECFMG was not a substantial factor in producing the harm.** .................... 2

   **A.  The district court erroneously found Restatement § 433(a) supports ECFMG as a matter of law.** ....................... 2

   **B.  A reasonable jury could find that factor (b) of Restatement § 433 favors Appellants, because ECFMG was involved early and often in Akoda's fraud.** ................... 8

   **C.  A reasonable jury could find that factor (c) of Restatement § 433, regarding "lapse of time," favors Appellants, because ECFMG was involved early and often in Akoda's course of fraud.** .......................................... 10

**II.  Pennsylvania would recognize emotional distress damages in this case.** .................................................. 12

   **A.  There was no "Doctor Akoda."** ................................................ 12

   **B.  Appellants' arguments are properly preserved.** .................. 13

   **C.  Appellants were well within the zone of danger.** ............... 14

   **D.  It is the status of the contact, not the contemporaneous nature of the realization of emotional distress, which**

determines whether Pennsylvania will recognize
emotional distress damages. ...................................................15

E.  Appellants do not in any way seek to "eliminate all
limits on recovery of emotional distress." ...........................17

III.  The Court should not affirm on the alternate ground of
consent, which Pennsylvania law does not support. ...........19

A.  Appellants did not consent to be treated by Igberase,
a man impersonating a fictitious "Doctor Akoda." ...........19

B.  Even if *Igberase* had a consent defense to any
hypothetical claims against him, it would be
unavailable to ECFMG. ...........................................................24

IV.  The Court should permit the district court to rule
in the first instance on whether ECFMG owed a duty,
or should resolve that issue in Appellants favor. .................25

A.  ECFMG confuses the issues of duty and breach. ...............25

B.  The Court should not resolve the issue of duty in
the first instance. .....................................................................29

C.  ECFMG's argument as to "duty" should be resolved in
Appellants' favor. .....................................................................31

CONCLUSION ......................................................................................34

**CERTIFICATE OF BAR MEMBERSHIP, COMPLIANCE WITH TYPE-VOLUME LIMITATION AND TYPEFACE REQUIREMENTS, AND VIRUS CHECK** .......................................... 36

**CERTIFICATE OF SERVICE** ............................................................. 37

v

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*StateBd. of Med. Ed. & Licensure v. Ferry,*
94 A.2d 121 (Pa. Super. Ct. 1953) ........................................................ 23

*Althaus v. Cohen*,
756 A.2d 1166 (Pa. 2000) ...................................................................... 26

*Barna v. Board of School Directors of Panther Valley School District,*
877 F.3d 136 (3d Cir. 2017) .................................................................. 29

*Bowman v. Home Life Ins. Co. of Am.*,
243 F.2d 331 (3d Cir. 1957) .................................................................. 21

*Com. v. Gregory,*
1 A.2d 501 (Pa. Super. Ct. 1938) .................................................... 22, 23

*Doe v. Philadelphia Cmty. Health Alternatives AIDS Task Force,*
745 A.2d 25 (Pa. Super. Ct. 2000) ........................................................ 16

*Hamer v. Neighborhood Hous. Servs. of Chicago,*
138 S. Ct. 13 (2017) ............................................................................... 29

*Hamil v. Bashline,*
392 A.2d 1280 (Pa. 1978) ...................................................................... 12

*Jefferson Bank v. Progressive Cas. Ins. Co.,*
965 F.2d 1274 (3d. Cir. 1992) ................................................................. 3

vi

*Jerri v. Harran,*
    625 F. App'x 574 (3d Cir. 2015) ............................................................. 30

*K.H. ex rel. H.S. v. Kumar,*
    122 A.3d 1080 (Pa. Super. Ct. 2015) ..................................................... 28

*Lux v. Gerald E. Ort Trucking, Inc.,*
    887 A.2d 1281 (Pa. Super. Ct. 2005) ..................................................... 12

*Niederman v. Brodsky,*
    261 A.2d 84 (Pa. 1970) ........................................................................... 14

*Rabutino v. Freedom State Realty Co.,*
    809 A.2d 933 (Pa. Super. 2002) ............................................................... 3

*Rost v. Ford Motor Co.,*
    151 A.3d 1032 (Pa. 2016) ................................................................. 3, 11

*Russell v. Educ. Comm'n for Foreign Med. Graduates,*
    15 F.4th 259, 263 (3d Cir. 2021),
    cert. denied, 142 S. Ct. 2706 (2022) ..................................................... 20

*Seebold v. Prison Health Servs., Inc.,*
    57 A.3d 1232 (Pa. 2012) ......................................................................... 25

*Shumosky v. Lutheran Welfare Services of Northeastern PA, Inc.,*
    784 A.2d 196 (Pa. Super. Ct. 2001) ................................................ 15, 16

*Stoddard v. Davidson,*
    513 A.2d 419 (Pa. Super. Ct. 1986) ................................................ 15, 16

*Straw v. Fair,*
   187 A.3d 966 (Pa. Super. Ct. 2018) ......................................................... 5

*Taylor v. Jackson,*
   643 A.2d 771 (Pa. Cmwlth. 1994)........................................................... 11

*Taylor v. Johnson,*
   985 P.2d 460 (Alaska 1999) ............................................................ 20, 21

*Topelski v. Universal S. Side Autos, Inc.,*
   180 A.2d 414 (Pa. 1962) ........................................................................ 3

*Tragarz v. Keene Corp.,*
   980 F.2d 411 (7th Cir. 1992)................................................................. 11

*Upper Skagit Indian Tribe v. Lundgren,*
   138 S. Ct. 1649 (2018)........................................................................... 30

*Walsh v. Univ. of Pittsburgh,*
   No. CIV.A. 13-00189, 2015 WL 128104 (W.D. Pa. Jan. 8, 2015) ......... 16

*Watson v. Sec'y Pa. Dep't Corr.,*
   436 Fed. Appx. 131 (3d Cir. 2011)........................................................ 30

## Statutes

Md. Code Ann., Health Occ. § 1-102 (West 2023) ................................... 23

viii

## Other Authorities

Restatement (Second) of Torts § 290(a) ................................................. 5, 9

Restatement (Second) of Torts § 302 ................................................. 5, 9, 25

Restatement (Second) of Torts § 324A ........................................ 26, 27, 28

Restatement (Second) of Torts § 328C (1965) ....................................... 28

Restatement (Second) of Torts § 433 ............................................... passim

Restatement (Second) of Torts § 892B (1979) ........................... 19, 21, 22

Restatement (Second) of Torts § 892C (1979) ....................................... 22

ECFMG's Response to Appellants' Brief does not rehabilitate the district court's grant of summary judgment. As Appellants reiterate below, the district court was not legally authorized to take the issue of proximate cause from the jury. The district court erroneously concluded, in effect, that ECFMG had to be the sole substantial factor in causing injury, and misapprehended critical facts concerning its ongoing role in Igberase's certification.

ECFMG's analysis also should not alter the conclusion that the district court erred in finding Pennsylvania would not recognize a tort of negligent infliction of emotional distress under the circumstances. Appellants' arguments are properly preserved and support the conclusion that well-established contours of Pennsylvania negligence law embrace the tort at issue here.

The Court should decline to affirm on the alternate ground of consent, which is not supported by Pennsylvania law. The Court should also decline to affirm on the ground that ECFMG did not owe a duty to Appellants. ECFMG confuses the elements of duty and breach. It never squarely argues it owed no duty, but rather argues merely it never

breached its duty. This argument is not properly before the Court and is for the jury to decide.

## I. The district court erred in finding that ECFMG was not a substantial factor in producing the harm.

The true question before the district court was whether no reasonable jury could find that ECFMG was a substantial factor in producing the outcome here. The district court never discussed whether a reasonable juror could make this finding. Neither does ECFMG. Rather, the district court concluded, based on its own assessment of the factors in Restatement (Second) of Torts § 433 and an incomplete understanding of the factual record, that ECFMG was not a substantial factor. In so doing, the district court erred as a matter of law.

### A. The district court erroneously found Restatement § 433(a) supports ECFMG as a matter of law.

ECFMG erroneously asserts Pennsylvania law supports the district court's analysis of prong (a) of the substantial factor test under Restatement (Second) of Torts § 433.[1] In Pennsylvania, there is no

---

[1] Factor (a) concerns "the number of other factors which contribute in producing the harm and the extent of the effect which they have in producing it." Restatement (Second) of Torts § 433 (1965).

safety in numbers for a tortfeasor. As this Court has held, a "substantial factor need not be ... the only factor" in causing harm. *Jefferson Bank v. Progressive Cas. Ins. Co.*, 965 F.2d 1274, 1284 (3d. Cir. 1992). The Pennsylvania Supreme Court has "consistently held that multiple substantial causes may combine and cooperate to produce the resulting harm to the plaintiff." *Rost v. Ford Motor Co.*, 151 A.3d 1032, 1051 (Pa. 2016).

The Pennsylvania Supreme Court has also "consistently and without exception held that issues of causation are matters of fact for the jury to decide." *Rost*, 151 A.3d at 1049. A court takes this issue from the jury "only when it is clear that reasonable minds cannot differ." *Rabutino v. Freedom State Realty Co.*, 809 A.2d 933, 941 (Pa. Super. 2002)(emphases added); *Rost*, 151 A.3d at 1049. Where there is a factual dispute, or "there is room for reasonable difference of opinion as to whether the defendant's act was the, or a proximate cause of the injury," the jury decides. *Topelski v. Universal S. Side Autos, Inc.*, 180 A.2d 414, 419 (Pa. 1962).

Here, "there is room for reasonable difference of opinion" on whether ECFMG was a substantial factor in causing emotional harm to

Appellants. It was the only indispensable entity in creating the circumstances that permitted Igberase to intimately examine women without their consent. Igberase might have attended other residency programs than Howard, sought licensure from other states besides Maryland and Virginia, and obtained credentialing from other hospitals besides Prince George's Hospital Center. Yet certification from ECFMG itself was indispensable for Igberase to see patients in the United States. Certification from no other entity would have sufficed. JA2675.

As the record shows, ECFMG was also the only entity that knew Igberase had repeatedly obtained ECFMG certification through fraud. William Kelly, Manager of ECFMG's Medical Education Credentials Department, had a well-founded belief that Akoda and Igberase (who had already been stripped of an earlier ECFMG certification due to fraud) were the same person. *See* Appellants' Br. 10–12 and documents cited therein. Yet Kelly did not elevate this issue to ECFMG's Credentials Committee. Later, when ECFMG assisted Akoda/Igberase in applying to residency programs, Kelly sought but was unable to verify "Akoda's" references. (*Id.*) Yet ECFMG continued to represent to hospitals and medical boards (which relied on ECFMG certification as

4

part of their decision-making process) that "Akoda" had a valid ECFMG certification. Appellants' Br. 12–13.

The district court did not find, and Appellees do not argue, that any of these other entities was a superseding cause that cut off ECFMG's liability. Nor could they: "[f]or an act to break the causal chain and relieve the defendant of liability, the act must be 'so extraordinary as not to have been reasonably foreseeable.'" *Straw v. Fair*, 187 A.3d 966, 995 (Pa. Super. Ct. 2018). The district court never found the conduct of other entities who unwittingly assisted the scheme was unforeseeable or negligent—and no record evidence supports this. (Even if it had, the negligence of others is foreseeable. Restatement (Second) of Torts § 302A (1965) cmt. c; *see also* Restatement (Second) of Torts § 290(a).)

Without such evidence, it was error for the district court to, without expressly finding them as such, treat them as superseding causes that cut off ECFMG's liability, notwithstanding its significant, ongoing role in the scheme over decades. As the opinion of Appellants' expert David Markenson explains:

5

> While it is accurate to say that certification by ECFMG is only one of the steps needed for a foreign medial graduate to obtain a license to practice medicine in the United States, it is a requirement without which an IMG cannot obtain a license. It is also a required certification for entering residency and obtaining hospital privileges. If ECFMG had acted reasonably, it would have denied certification to Akoda, and would have revoked Akoda's certificate, he would not have been able to enter the Howard University residency program, he would not have been able to obtain a Maryland medical license, he would not have been granted privileges at Prince Georges' Medical Center, and he would not have been able to harm the plaintiffs.

JA2675 (emphasis added).

ECFMG did not simply certify Akoda once and leave it at that (although that would have been enough to impose liability). In separate certification status reports, sent to each residency program, medical board, or hospital to which Igberase applied, it repeatedly, falsely represented he possessed a valid ECFMG certification.

Although ECFMG is incorrect in characterizing the other entities as "independent" causes that did not rely on ECFMG certification in their decision-making, for the reasons stated (and documents cited) in Appellants' brief (*see* Appellants' Br. 30–34), this issue is ultimately a distraction. "Independent" does not mean "superseding." The record

6

does not establish, and the district court did not find, that the conduct of any other party was a *superseding* cause.

ECFMG also misappropriates Appellants' agreement with certain general propositions in ECFMG's self-described Statement of Undisputed Material Facts (SUMF). Appellee's Br. 33. ECFMG stated that "ECFMG Certification status reports for residency programs do not verify (a) an IMG's identity," among other matters. It stated, also in the present tense, that the institution receiving an ECFMG Certification performs an assessment of those matters. JA2820–21. Appellants agreed, based on their understanding of ECFMG's current practices.

Even if ECFMG had undertaken nothing other than accurate reporting of primary source verification and testing (which does not reflect the facts), that should not avoid jury consideration of its liability. For over a decade, ECFMG represented to all comers that "Akoda" possessed a valid ECFMG certification. It should have been obvious to ECFMG, however, that "Akoda" did not possess a valid ECFMG certification. It had extensive, specific, credible evidence showing that "Akoda" and Igberase (whose certification had already been revoked) were the same person. JA293, JA2925 ¶¶ 41-43, 58-64. It knew that

7

Akoda and Igberase presented different purported medical diplomas, from two different medical schools, issued less than two years apart—casting serious doubt on their authenticity. JA753. ECFMG does not today, in fact, stand behind the authenticity of either diploma or whether Igberase/Akoda ever went to medical school. JA653.

### B. A reasonable jury could find that factor (b) of Restatement § 433 favors Appellants, because ECFMG was involved early and often in Akoda's fraud.

ECFMG concedes its certification "may have been necessary for Dr. Akoda to (eventually) treat patients." Appellee's Br. 36. Yet it claims, erroneously, that merely because Akoda had to undertake additional actions, such as a medical licensing exam, a residency program, and receive admitting privileges from a hospital, its actions were "harmless," supporting finding in its favor on factor (b) of Restatement § 433.[2]

As explained above and in Appellants' opening brief, ECFMG acted jointly with other forces in enabling Akoda. It played an

---

[2] Factor (b) concerns "whether the actor's conduct has created a force or series of forces which are in continuous and active operation up to the time of the harm, or has created a situation harmless unless acted upon by other forces for which the actor is not responsible."

indispensable, irreplaceable role in enabling Akoda to embark and continue upon his 20-year fraudulent scheme in the United States. Separate ECFMG reports certifying, falsely, that Akoda had a valid certification were required at every significant step of the way: to obtain entry into a residency program, to obtain state licensure, and to obtain clinical privileges. JA205–06. Its negligent acts and omissions were ongoing throughout the relevant period.

ECFMG's argument is also legally unsupportable because mere negligence of other actors—which ECFMG has not pleaded with any specificity nor supported with admissible evidence—is foreseeable and does not operate to immunize a party from liability. ECFMG was "required to know that there is a certain amount of negligence in the world, and that some human beings will fail on occasion to behave as a reasonable man would behave," and "govern [its] conduct accordingly." Restatement (Second) of Torts § 302A (1965) cmt. c; *see also id.* at § 290(a). Restatement § 433 must be interpreted with this in mind.

There can be multiple causes of an injury under the substantial factor test. A jury can reasonably conclude ECFMG was one, if not the only one.

**C.    A reasonable jury could find that factor (c) of
Restatement § 433, regarding "lapse of time," favors
Appellants, because ECFMG was involved early and
often in Akoda's course of fraud.**

The district court erred legally and factually in finding that

Restatement § 433(c) favored ECFMG as a matter of law. First, the

Court misperceived ECFMG's role in Akoda's fraud, mistakenly

concluding it was limited to its initial certification of "Akoda" (the third

certification of Igberase). ECFMG's negligence in initially certifying

Akoda was itself a substantial factor. And, as Appellants set forth in

their opening brief with citations to the record, ECFMG continued to be

involved in Akoda's fraudulent scheme even after the 1998 certification

by negligently investigating him after receiving substantial information

indicating he was Igberase and continuing to falsely represent he had a

valid ECFMG certification to residency programs, hospitals, and

medical boards up until at least 2011, one year before he began seeing

patients at Prince George's Hospital Center. Appellants' Br. 10–13;

JA100–01, 279, 284–85, 287, 289, 293, 295, 312–13, 319, 358, 367, 675–

77, 4266, 4655. The record simply does not indicate that ECFMG's role

ceased in 1998 or 2006 (although ECFMG could still be held liable if it had). *Id.*

Second, even if the Court were to set aside ECFMG's continuing role in Igberase's scheme (which it should not), the lapse of time is itself not sufficient. As Pennsylvania law and comment (f) to Restatement § 433(c) provide, "where it is evident that the influence of the actor's negligence is still a substantial factor, mere lapse of time, no matter how long it is, is not sufficient to prevent it from being the legal cause of the other harm." *Taylor v. Jackson*, 643 A.2d 771, 776 (Pa. Cmwlth. 1994)(quoting Restatement (Second) of Torts § 433 cmt. f). ECFMG certification was an indispensable, ongoing predicate for Igberase to advance his "medical career" at every stage.

In sum, the substantial factor test "is aimed at alleviating the inequities that result when applying the but-for test in a multi-defendant case, not at creating such inequities." *Rost*, 151 A.3d at 1051 n.13 (quoting *Tragarz v. Keene Corp.*, 980 F.2d 411, 425 (7th Cir. 1992)). The district court erroneously took the issue of proximate cause from the jury. There is no evidence that any other institution from whom "Akoda" obtained credentials or privileges to practice medicine knew

11

more, earlier, or longer about "Akoda's" conduct and true identity as a serial fraudster. ECFMG knew first, and it knew the most. Its conduct is a substantial factor in bringing about the harm here, which was the product of an unbroken chain of events originating from ECFMG's negligence. *See Lux v. Gerald E. Ort Trucking, Inc.,* 887 A.2d 1281, 1287 (Pa. Super. Ct. 2005). A reasonable jury could so find.[3]

## II. Pennsylvania would recognize emotional distress damages in this case.

### A. There was no "Doctor Akoda."

Appellants did not receive medical treatment from "Doctor Akoda," because *Doctor Akoda never existed*. While this fact is relevant to many other portions of this Reply, it merits its own section, as ECFMG still apparently fails to grasp this simple, central truth. ECFMG references "Dr. Akoda" more than 140 times throughout its

---

[3] Contrary to ECFMG's contention, there is no suspect "relaxed causation standard" needed to avoid summary judgment at this stage. The court in *Hamil v. Bashline*, 392 A.2d 1280, 1282 (Pa. 1978), which ECFMG attacks, set forth standard Pennsylvania tort law on substantial factor causation, and there was no indication it limited its holding to medical malpractice cases. In any event, this case is not essential to resolving the issue in Plaintiffs' favor, for the reasons stated above.

brief. ECFMG, attempts to justify this in a footnote by claim that "the individual who treated Appellants" is "Doctor Akoda" simply "[b]ecause 'John Akoda' was licensed to practice medicine in Maryland and Virginia." Appellees' Br. 4 n.1.

This is formalism beyond reason. Akoda has no existence and no existing license: belatedly armed with the substance of the information ECFMG had all along, Virginia and Maryland invalidated this medical license. JA101 at ¶ 38-39. Igberase was never a physician. No medical license ever was issued *to Igberase*. It is only because of ECFMG's negligence that Igberase could pretend to be a duly licensed physician. "Dr. Akoda" exists only in imagination.

## B.   Appellants' arguments are properly preserved.

ECFMG contends that Appellants' arguments regarding the zone-of-danger requirement are forfeited, on the grounds that Appellants contended the "reasoning behind this exception should be used." Appellee's Br. 27. This is nonsensical. Appellants plainly argued below that they were in the currently recognized zone-of-danger and fit the purpose of the rule. JA3955–56. ECFMG's confusion appears to be because, in this specific subsection, Appellants focused on their fit

13

within the "more flexible standard for emotional distress damages," as
enumerated in *Niederman*. JA3956 (quoting *Niederman v. Brodsky*, 261
A.2d 84, 85 (Pa. 1970)).

The post-*Niederman* rule, as Appellants noted below, is that a
court must balance "the gravity of appellant's injury and the inherent
humanitarianism of our judicial process and its responsiveness to the
current needs of justice." JA3956 (quoting *Niederman*, 261 A.2d at 85).
Appellants properly argued there (and in this Court) that they had
satisfied this test and that their claims should proceed. ECFMG's
preservation concerns are misplaced.

## C.    Appellants were well within the zone of danger.

ECFMG claims, with little analysis, that the zone of danger
exception "is facially inapplicable." Appellee's Br. 27. Appellants were
subjected to "substantial wrongs" when Igberase, with ECFMG's help,
subjected them to "life threatening and intensively private gynecologic
and obstetric procedures by an imposter, operating under a fictious
identity with fictitious and fraudulently obtained credentials." *Id.* at 43.
"This conduct, which occurred as a direct and proximate result of
Defendant's failure to carry out its gatekeeping role with respect to

14

IMGs, presented substantial risk of physical harm to the Appellants, given the potential for serious medical complications." *Id.* at 43.

Appellants were squarely within the zone of danger. ECFMG's arguments that the rule is "facially inapplicable" are without merit.

### D. It is the status of the contact, not the contemporaneous nature of the realization of emotional distress, which determines whether Pennsylvania will recognize emotional distress damages.

Plaintiffs were subject to a physical impact because of ECFMG's conduct. That much is inescapable. The physical harm was immediate: the women were immediately subject to a sexual assault. As Appellants laid out in their opening Brief, "there is no requirement that damage be immediate so long as it is 'directly traceable to the peril in which the defendant's negligence placed the plaintiff.' " Appellants' Br. 39 (quoting *Stoddard v. Davidson*, 513 A.2d 419 (Pa. Super. Ct. 1986)).

ECFMG attempts to escape this by contrasting two cases where a plaintiff feared they might contract AIDS. Appellee's Br. 24–26. In one, *Shumosky v. Lutheran Welfare Services of Northeastern PA, Inc.*, 784 A.2d 196, 198 (Pa. Super. Ct. 2001), the plaintiff was wrongfully pierced with a needle and learned, hours later, that she may have been exposed

to AIDS. *Id.* In the other, relied upon by ECFMG, the plaintiff non-tortiously received a blood test, and was mistakenly told they had tested positive for HIV. *Doe v. Philadelphia Cmty. Health Alternatives AIDS Task Force*, 745 A.2d 25 (Pa. Super. Ct. 2000). In *Shumosky*, the contact itself was tortious, in *AIDS Task Force* it was not. ECFMG's analysis fails on this ground alone.

Pennsylvania recognizes emotional damages where the defendant's tortious behavior contributes, even indirectly, to an impact. In *Stoddard v. Davidson*, 513 A.2d 419, 422 (Pa. Super. Ct. 1986), for example, the plaintiff accidentally ran over a body that had been left there after the defendant struck and killed a pedestrian earlier. It was no impediment that the plaintiff was "outside of the zone of danger" and not "a close family member," because there was a physical impact, even if it was not the defendant directly and personally assaulting the defendant. *Id.* at 265. Moreover, the impact need not be contemporaneous with the harm. *See id.*; *see also Shumosky*, 784 A.2d at 198¸ *supra*; *Walsh v. Univ. of Pittsburgh*, No. CIV.A. 13-00189, 2015 WL 128104, at *16 (W.D. Pa. Jan. 8, 2015)("[F]or a physical impact or injury to support a claim of NIED it must have been the direct cause of

16

negligence by the defendant, occurring *prior to or contemporaneous with* the resultant emotional distress.")(emphasis added).

ECFMG's argument would preclude recovery, against a hospital or credentialing organization on notice of a healthcare provider's behavior, by a patient who was sexually assaulted by the healthcare provider while under anesthesia, but only learned of it months later. The absurdity of this result should indicate the poverty of ECFMG's reasoning. Plaintiffs were physically assaulted and are entitled to recover emotional damages flowing from conduct enabling those assaults. Where a defendant's tortious acts contributed to an impact, the emotional distress from that impact is compensable.

### E.   Appellants do not in any way seek to "eliminate all limits on recovery of emotional distress."

ECFMG charges Plaintiffs with seeking to "eliminate all limits on recovery of emotional distress." (Appellee's Br. 39.) This is untrue. Appellants seeking no recovery for emotional distress except where, as here, a business entity amassed for itself the power of a minor

17

governmental regulatory agency,[4] with none of the safeguards. Where that entity actively knew one of its applicants had lied and failed their tests. Where that entity certified a charlatan under an invented identity, who went on to use that identity to impersonate a doctor and touch women in the most intimate ways while they thought they were safe.

It is no revolutionary notion to allow a woman to recover from the entity which knowingly certified a fraud, leading directly to her sexual assaults. Indeed, it is entirely consistent with the law as it exists in Pennsylvania today. Appellants were subject to clearly tortious contact and were well within the zone of danger. (*See supra*.)

Upon learning of their assaults, which ECFMG's misdeeds had hidden from them, the women involved were understandably emotionally devastated. ECFMG's fears of unchecked emotional damages cases flooding Pennsylvania's courtrooms are unfounded and

---

[4] With few exceptions, not applicable here, international medical graduates do not practice in the United States without the approval of ECFMG.

overblown. Only the most egregious of the damages ECFMG has

caused, like in this case, will lead to liability.

### III.    The Court should not affirm on the alternate ground of consent, which Pennsylvania law does not support.

#### A.    Appellants did not consent to be treated by Igberase, a man impersonating a fictitious "Doctor Akoda."

Where "B is not a physician and knows that A believes him to be

one," and "A, believing B to be a physician, removes her clothing and

permits B to lay hands on her person for the purpose of a medical

examination," "B is subject to liability to A for battery," and consent is

no defense. Restatement (Second) of Torts § 892B (1979). Igberase was

not a physician and knew that the class members believed him to be

one. The class members, believing Igberase to be a physician named

"Dr. Akoda," permitted Igberase to lay hands on their persons for the

purposes of medical examinations and treatment. Igberase would be

liable to the class members for battery. ECFMG, for its role in

facilitating Igberase's fraud, cannot rely on a consent defense

unavailable to Igberase.

Consent obtained by fraud is no consent. ECFMG contends that

Plaintiffs have pointed only to "Dr. Akoda's misrepresentations about

his name" to "render their consent ineffective." Appellee's Br. 49. First, *there is no, and never was, a "Doctor Akoda."* There was a man, presumably named Igberase, who, as the Third Circuit has already noted, "ditched his first two names and invented another one," Akoda. *Russell*, 15 F.4th at 263. Plaintiffs' consent was predicated on multiple known acts of fraud. No reasonable woman would have let "Dr. Akoda" operate on her had she known that he was not a doctor, was not "Akoda," and had an earlier ECFMG certification revoked for fraud. ECFMG's notion that this was just a simple case of a "doctor" using a fake name is demonstrably inaccurate.

According to ECFMG, "Appellants consented to medical treatment by an individual licensed to practice medicine. They received just that." Appellee's Br. 52. But, even if the class members consented to be treated by a licensed physician, namely a "Doctor Akoda," they received "treatment" by a fraudulently licensed charlatan, Igberase. *Appellants did not consent to treatment by Igberase.*

ECFMG's continuing insistence that a "Doctor Akoda" exists does not comport with the facts. In support, ECFMG cites an Alaska case, *Taylor v. Johnson*, 985 P.2d 460 (Alaska 1999). Appellee's Br. 51. In

20

*Taylor*, the plaintiff was treated by an actual doctor, licensed under his real name, who had misrepresented his credentials to become licensed. *Id.* The difference is that there, the doctor improperly obtained his medical license; here, Igberase fraudulently obtained a license for someone else and pretended to be this other person. That is, in *Taylor*, the patient was treated by a doctor who should never have been a doctor; here, Plaintiffs were treated by a man pretending to be a doctor. According to ECFMG, "it is black-letter law that ... [c]onsent is ineffective [where] it is induced 'by a substantial mistake,' " or other situations. Appellee's Br. 49 (quoting Restatement (Second) of Torts § 892B). Igberase did not make a "mistake." He perpetrated a fraud. And he perpetrated that fraud on Plaintiffs, not just on state agencies and healthcare entities.

Where a fraudster poses as a doctor, this Court has concluded that the "permission to the touching ... obtained by fraud vitiates the consent given by the ... patient." *Bowman v. Home Life Ins. Co. of Am.*, 243 F.2d 331, 333 (3d Cir. 1957). Igberase was a fraudster posing as a doctor named "Dr. Akoda." ECFMG actually cites *Bowman*, but attempts to explain, unsuccessfully, that it cannot apply. ECFMG contends that,

21

because "Akoda" finished a residency program and obtained a fraudulent license, that the "consent" to his offensive procedures was valid. Appellee's Br. 50.

There was no "Dr. Akoda." Igberase was never a physician, and no medical license was ever issued to Igberase. Any medical license at issue was issued to a non-existent "Akoda." It is only because of ECFMG's fraud and failures that Igberase was able to pretend to be the properly licensed "Dr. Akoda." *See* Restatement (Second) of Torts § 892B (1979).

Finally, even if the women did nominally consent, Igberase's crime would have invalidated that consent and permitted recovery against him. A victim's consent to a crime will sometimes bar a tort action, but not where "conduct is made criminal in order to protect a certain class of persons irrespective of their consent." Restatement (Second) of Torts § 892C (1979). The purpose of Pennsylvania's medical licensing statute is, in part, to ensure "that the applicant be a person of good moral character." *Com. v. Gregory*, 1 A.2d 501, 506 (Pa. Super. Ct. 1938). "Because of the extreme intimacy of the relationship between physician and patient, it is of the utmost importance that only those who are

22

competent to practice should be permitted so to do." *Id.* "The safety of the citizens of this Commonwealth is endangered by incompetent physicians and surgeons, and a due regard for public health and the preservation of human life demands that none but competent and properly qualified physicians and surgeons shall be permitted to practice their profession." *State Bd. of Med. Ed. & Licensure v. Ferry*,[5] 94 A.2d 121, 123–24 (Pa. Super. Ct. 1953)(quoting Medical Practice Act of 1911, 63 P.S. § 401 historical note).

Maryland, the state ECFMG assisted Igberase in defrauding to obtain a purported medical license for an imaginary man, has also determined "that health occupations should be regulated and controlled as provided in this article to protect the health, safety, and welfare of the public." Md. Code Ann., Health Occ. § 1-102 (West 2023). Thus, both Maryland and Pennsylvania recognize the danger that fraudulent physicians pose to the public and have enacted statutes for the protection of the public.

---

[5] In *Ferry*, one person, a doctor, was held liable where they aided another in representing themselves, even just impliedly, as a doctor and performing unlicensed medical procedures. *Id.*

23

Igberase, with ECFMG's negligent assistance, posed as "Dr. Akoda" and used this to sexually assault women. ECFMG's victim-blaming is misplaced.

### B. Even if *Igberase* had a consent defense to any hypothetical claims against him, it would be unavailable to ECFMG.

Even if the Appellants had been able to consent under these circumstances, they did not consent to ECFMG's total abandonment of its licensing responsibilities. The torts alleged are all against ECFMG, not against Igberase. Unless ECFMG is acknowledging that its relationship with Igberase is close enough to allow them to share defenses (in which case ECFMG would be vicariously liable for Igberase's torts), ECFMG must rely on its own defenses.

ECFMG presents no argument to the contrary. ECFMG's section on consent merely attempts to show (unsuccessfully) that the class members consented to Igberase's unauthorized treatment. ECFMG never explains how any (hypothetical) consent would be transferred to ECFMG. It would not. Finally, ECFMG cites no case where a third party was absolved from liability for emotional distress damages based on a court's conclusion that a plaintiff did consent to treatment by a

24

serial fraudster. The Court should not affirm based on ECFMG's

groundless consent defense.

## IV.    The Court should permit the district court to rule in the first instance on whether ECFMG owed a duty, or should resolve that issue in Appellants favor.

### A.    ECFMG confuses the issues of duty and breach.

ECFMG sought summary judgment on the ground that it did not

owe a duty to Appellants. Appellants presented three responsive

arguments. *First*, Appellants argued that ECFMG, like any natural or

corporate person, owed a duty to Appellants to exercise reasonable care

to prevent foreseeable harm. *See* JA4707. When acting affirmatively, a

person is "'under a duty to others to exercise the care of a reasonable

man to protect them against an unreasonable risk of harm to them

arising out of the act.' This duty appropriately undergirds the vast

expanse of tort claims in which a defendant's affirmative, risk-causing

conduct is in issue." *Seebold v. Prison Health Servs., Inc.*, 57 A.3d 1232,

1246 (Pa. 2012)(quoting Restatement (Second) of Torts § 302, cmt. a

(1965)). This theory of duty is reflected in the opinions presented by

Appellants' three standard of care experts. For example, David

Markenson contended in his report, presented to the district court, that

ECFMG "failed to exercise reasonable care in its certification of Akoda," and its "failures caused harm to the named plaintiffs and members of the class." JA2674.

*Second*, Appellants argued ECFMG owed them a duty arising from its undertaking, based on the principles set forth in the Restatement (Second) of Torts § 324A. JA2674 (ECFMG "failed to exercise reasonable care in its investigation of allegations made about Akoda"), JA3959 ("ECFMG owes a duty to the Appellants both under the Restatement § 324A and also in consideration of the *Althaus* factors"); JA3960–71; JA4706–08.[6]

*Third*, Appellants argued the Court should impose a duty on ECFMG considering the factors set forth in *Althaus v. Cohen*, 756 A.2d 1166, 1169 (Pa. 2000) and its progeny, in the event the Court was unconvinced the general duty of care and the duty of undertaking under Restatement § 324A applied to ECFMG. *See* JA3959, 3960–71, 4706–08.

---

[6] ECFMG's contention that Appellants forfeited the theory that ECFMG negligently performed an investigation it undertook is entirely without merit. *See* JA2674, 3959, 3960–71; 4706–08; *see also* Appellant Br. 10–13 and record citations therein.

Appellee's brief nowhere argues it did not owe a duty of reasonable care under general negligence principles, and nowhere argues it did not owe a duty under *Althaus*. Its briefing only concerns Restatement § 324A. And even there, ECFMG *does not actually argue it owed no duty to Appellants*. To be sure, ECFMG characterizes the argument as one that will establish "ECFMG did not owe a duty to Appellants" or "did not owe any duty to Appellants that was allegedly breached." Appellee's Br. 40.

This promise is not fulfilled. In fact, ECFMG now acknowledges it had a duty under Restatement § 324A to perform its undertaking with reasonable care. Appellee's Br. 40–48. ECFMG merely contends it did not *breach* that (admitted) duty of care, that the *scope* of the duty it undertook is different from what Appellants claim. For example, it claims, incorrectly, that it "fully and reasonably performed the only two tasks that it undertook to perform in granting Dr. Akoda an ECFMG Certificate" and "never promised to—and did not—verify Dr. Akoda's identity, criminal history, moral character, immigration status, or any other information." Appellee's Br. 43. And it claims, incorrectly, that the

27

scope of its duty of undertaking did not include appropriately credentialing and investigating applicants.

The questions of duty and breach are distinct. A court determines "whether a duty attaches under the circumstances of the case before it." *K.H. ex rel. H.S. v. Kumar*, 122 A.3d 1080, 1097 (Pa. Super. Ct. 2015). But "in all but extraordinary cases, establishing the applicable standard of care, or if one prefers, the contours of the general duty recognized in the first instance by the court, requires expert testimony and presents a question of fact for the jury." *Id.* In *Kumar*, the Pennsylvania Superior Court held the question of whether medical providers were liable for failing to report child abuse was for the jury, not the court, to resolve, by applying the general professional negligence standard. *Id.; see also* Restatement (Second) of Torts § 328C (1965).

Nowhere does ECFMG deny it owed a duty under Restatement § 324A (or under general negligence principles, or *Althaus*). Its arguments rely on the predicate that it did owe a duty under § 324A. ECFMG might have contended it made no undertaking, its undertaking did not give rise to any duties whatsoever under Restatement § 324A, or

28

that it did not owe a duty based on principles of foreseeability. It did not.

As the argument that it did not owe a duty has not been properly presented to the Court, it is forfeited. *Barna v. Board of School Directors of Panther Valley School District*, 877 F.3d 136 (3d Cir. 2017). Since ECFMG did not seek summary judgment below on the issue of breach, its arguments here to that effect (clothed in the lineaments of duty) are waived. *Hamer v. Neighborhood Hous. Servs. of Chicago*, 138 S. Ct. 13, 17 n.1 (2017).

## B. The Court should not resolve the issue of duty in the first instance.

If the Court somehow construed ECFMG's arguments as concerning the existence of a duty, and were somehow inclined to rule in its favor, it should refrain from resolving this issue. The district court's order affirming summary judgment did not address the issue of whether ECFMG owed a duty under the circumstances. Substantial briefing and numerous expert affidavits and depositions were submitted by the parties on this question.

29

Although the Court has discretion to affirm the district court on any basis supported by the record, it should permit the district court to address the issue of duty, with the benefit of the full record and oral argument of the parties (which has not occurred). This Court is "a court of review, not of first view" and has remanded for consideration of issues in the first instance when parties make facially plausible arguments. *See Jerri v. Harran*, 625 F. App'x 574, 578–79 (3d Cir. 2015); *Watson v. Sec'y Pa. Dep't Corr.*, 436 Fed. Appx. 131, 137 n.5 (3d Cir. 2011); *Upper Skagit Indian Tribe v. Lundgren*, 138 S. Ct. 1649, 1654 (2018).

Moreover, the district court never ruled on Appellants' renewed motion for class certification following remand from this Court. A ruling from this Court on the issue of duty—one of the issues on which Appellants sought class certification—would complicate resolution of that pending motion and could affect the shape and course of the litigation in an unpredictable way. The Court should address the issue of duty with the benefit of the district court's assessment of the matter, on a fully developed record.

30

### C.    ECFMG's argument as to "duty" should be resolved in Appellants' favor.

Appellants submitted significant briefing and evidence to the district court on the issue of whether ECFMG owed a duty (and whether it breached that duty). To avoid undue repetition, Appellants respectfully refer the Court to those materials in the record. *See* JA3958–71 (and documents cited therein), 4703–12 (and documents cited therein). Although Appellants believe the issue of breach (the scope and content of the duty, or what the standard of care required) is for the jury, the record supports the conclusion that ECFMG owed and breached a duty to Appellants, under all three theories of duty Appellants advanced below.

Again, the issue of breach is not before this Court. But even if a factfinder were somehow to agree with ECFMG and conclude it need only have reasonably "provide[d] primary source verification' of doctors' diplomas; and (2) test[ed] [their] basic competence," it still could reasonably find ECFMG liable: ECFMG negligently performed even the incorrectly narrowed undertaking it claims to have performed. In 1995, ECFMG revoked Igberase's original ECFMG certificate and invalidated

31

the second certificate he obtained, under the Charles identity, because he had engaged in "irregular behavior" by misrepresenting his identity. JA246–252, 260–61. Igberase then applied under the Akoda identity. He was issued a certificate in 1998, based on passing the exam and ECFMG certifying that "John Nosa Akoda" had received a medical diploma from the University of Benin (which bears a different name, "Johnbull Enosakhare Akoda").

By 2000, ECFMG, through its Director of Medical Credentialing, William Kelly, "believe[d] that Akoda and Igberase are one and the same." JA293. It never changed this belief, and never submitted the matter to its Credentials Committee for review—even though Jersey Shore Medical Center had come to the same conclusion about Akoda and kicked him out of its residency program after it fortuitously discovered he had supplied a false Social Security Number and two different green cards. Appellants' Br. 5–6; JA276, 279, 291, 293. This further corroborated ECFMG's suspicions and indicated to ECFMG how important conveying accurate information about Akoda was to entities who sought to verify and relied on Akoda's ECFMG certificate.

32

Kelly continued to doubt Akoda's credibility. JA367. In fact, this belief was reinforced when Kelly was unable to verify Akoda's purported letters of recommendation submitted in connection with his residency application. JA297, 675–77.

ECFMG represented to every residency program, medical board, and hospital to which Akoda applied that he possessed a valid ECFMG certificate. This was a negligent, even recklessly false representation, even on ECFMG's terms. ECFMG believed Akoda and Igberase were one and the same, knew it had revoked Igberase's certificate issued under his own name, and declared invalid the certificate issued to him under the fake Charles identity. Since Igberase obtained the Akoda certificate under the false Akoda identity, it, too, was invalid.

The certificate itself contains a false representation. The face of Akoda's ECFMG certificate states, "Educational Commission for Foreign Medical Graduates certifies that John Nosa Akoda has *satisfied all the requirements of the Commission*, successfully passed its examinations, and has been awarded this certificate." JA3042 (emphasis added). Akoda had not satisfied all the requirements of the Commission: at minimum, there was no "Akoda," and Igberase had not

33

satisfied all of ECFMG's requirements. He, in fact, violated ECFMG requirements by obtaining multiple certificates under multiple false identities, and was adjudged to have engaged in "irregular behavior" in doing so. After realizing its mistake in issuing a certificate to Akoda, ECFMG disregarded its own belief about Akoda, and falsely stated he had a valid certification, to numerous healthcare entities and the regulatory bodies of at least two states, for over a decade.

## CONCLUSION

For the foregoing reasons, Appellants respectfully request that this Court reverse the judgment of the district court.

*[signature follows below]*

Respectfully submitted,

Dated: <u>January 13, 2023</u>

JANET, JANET & SUGGS, LLC

<u>/s/ Patrick Thronson</u>
  Patrick A. Thronson
  Stephen C. Rigg
  4 Reservoir Circle, Suite 200
  Baltimore, MD 21208
  (410) 653-3200

CONRAD O'BRIEN PC
  Nicholas M. Centrella
  Robin S. Weiss
  1500 Market Street, Suite 3900
  Philadelphia, PA 19102-2100
  (215) 864-9600

LAW OFFICES OF PETER G. ANGELOS, P.C.
  Paul M. Vettori
  One Charles Center
  100 N. Charles Street, 20th Floor Baltimore, Maryland 21201
  (410) 649-2000

SCHOCHOR AND STATON, P.A.
  Scott Kurlander
  The Paulton
  1211 St. Paul Street
  Baltimore, Maryland 21202
  (410) 234-1000

Z LAW, LLC
  Cory L. Zajdel
  2345 York Rd. Suite B-13
  Timonium, MD 21093
  (443) 213-1977

THE COCHRAN FIRM
  Karen Evans
  David Haynes
  1666 K Street NW
  Suite 1150
  Washington, DC 20006
  (202) 682-5800

*Attorneys for Appellants*

35

## CERTIFICATE OF BAR MEMBERSHIP, COMPLIANCE WITH TYPE-VOLUME LIMITATION AND TYPEFACE REQUIREMENTS, AND VIRUS CHECK

I, Patrick A. Thronson, counsel for Appellants, certify, pursuant to Local Appellate Rule 28.3(d), that I am a member in good standing of the Bar of this Court.

I further certify, pursuant to Federal Rules of Appellate Procedure 32(a)(5)–(7), and Local Appellate Rule 31.1(c) and 32.1(c), that the foregoing Reply Brief of Appellants Monique Russell, Jasmine Riggins, Elsa M. Powell, and Desire Evans, is proportionately spaced and has a typeface of 14-point Century Schoolbook, contains 6,469 words, and that the text of the electronic brief is identical to the text of the paper copies.

I further certify, pursuant to Local Appellate Rule 31.1(c), that Bitdefender Endpoint Security did not detect a virus in this filing.

Dated: January 13, 2023          */s/ Patrick Thronson*
                                 Patrick A. Thronson

# CERTIFICATE OF SERVICE

I hereby certify that on January 13, 2023, the foregoing Reply Brief of Appellants Monique Russell, Jasmine Riggins, Elsa M. Powell, and Desire Evans was filed with the Clerk of Court for the U.S. Court of Appeals for the Third Circuit through the Court's CM/ECF system. All counsel of record are registered CM/ECF users

William R. Peterson
Morgan, Lewis & Bockius, LLP
1000 Louisiana St., Suite 400
Houston, TX 77002

Brian W. Shaffer
Matthew D. Klayman
Morgan, Lewis & Bockius, LLP
1701 Market Street
Philadelphia, PA 19103

Dated: January 13, 2023

*/s/ Patrick Thronson*
Patrick A. Thronson

37